**J. Bryant YOUNG, Plaintiff–Appellant,**

**v.** ˙

**The CITY OF HOUSTON, TEXAS, The Civil Service Commission of the City of Houston, Kathryn J. Whitmire, Individually and in her official capacity as Mayor of the City of Houston, Lee Elliott Brown, Individually and in her official capacity as Director of Affirmative Action of the City of Houston, Douglas E. Hamel and Doris Rodriguez, in their official capacities as members of the Civil Service Commission of the City of Houston, Defendants–Appellees.**

No. 89–2587.

United States Court of Appeals,
Fifth Circuit.

July 20, 1990.

Gregg M. Rosenberg, Houston, Tex., for plaintiff-appellant.

A.L. Dent, III, Paula A. Johnson, Fulbright & Jaworski, Houston, Tex., for defendants-appellees.

Before GARZA, HIGGINBOTHAM and DUHÉ, Circuit Judges.

GARZA, Circuit Judge:

The district court dismissed fired employee's race, sex and age discrimination actions at the close of employee's evidence at trial. Because we find that the employee was entitled to a jury determination on his claim of age discrimination, we REVERSE and REMAND in part and AFFIRM in part.

## FACTS

Bryant Young, a white man, worked for the City of Houston as an Equal Opportunity specialist, and in 1981 became Section Chief in the Contract Compliance Program. In 1984, Lee Brown, a Black woman, became his boss when the Affirmative Action and Contract Compliance departments were reorganized and transferred to the mayor's office. Because Young was repeatedly out of the office for long stretches of time without explanation, slept frequently at his desk, and shirked direct requests from his supervisors, Brown remarked that she didn't want any "white tokens" in her department who weren't pulling their weight. She also referred to Young and the only other white man in the office as "white faggots." Young testified further that whites were treated differently than nonwhites in Brown's office.

Though Young had previously had "above standard" job reviews, he began now to get written reprimands, and says that Brown told him to resign or she would "fill his file with so much paper he would never get a job." He was ultimately suspended indefinitely, and saw that suspension upheld by the civil service commission. Young testified that, when finally terminated, he was replaced by a Black man under 40; the City claims he was replaced by a white man over 40. Young was 55 years old.

Young sued in federal court, alleging race, sex, and age discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Age Discrimination in Employment Act ("ADEA").[1] At the close of Young's case, the court dismissed his sex discrimination claim and directed verdicts for the City on the race and age discrimination claims because Young had failed to make out a prima facie case.[2] This appeal followed.

## DISCUSSION

### 1. Sex Discrimination

■ The court below dismissed Young's Title VII sex discrimination claim, in part because he had not raised the claim with the Equal Employment Opportunity Commission ("EEOC"), a condition precedent to any Title VII suit. The scope of inquiry of a court hearing in a Title VII action "is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands*, 431 F.2d 455, 466 (5th Cir.1970). The scope of inquiry is not, however, limited to the *exact* charge brought to the EEOC. *Id.* Young alleged only race and age discrimination with the EEOC, and there is no evidence

---

1. Since Young filed and tried this action, the Supreme Court published *Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In it, the Court held that Section 1981 protects the right to contract only, and does not address post-formation conduct, which we have here. Young concedes in his

Brief that section 1981 can now give him no relief. For this reason, we will not address the district court's rulings on that claim.

2. Young called all of the City's witnesses during his case-in-chief, so the court had all of the evidence before it when directing the verdict.

that the EEOC considered sex discrimination.

■ Young argues that the City waived any complaint on this point by signing a pre-trial order which stipulated that all jurisdictional prerequisites had been met. While parties to a suit may not stipulate away jurisdiction questions, there may not be a question here. A failure of the EEOC prerequisite does not rob a court of jurisdiction. *Henderson v. United States Veterans Admin.*, 790 F.2d 436, 440 (5th Cir. 1986); *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir.1981) (*en banc*). So, as the City concedes, the district court's finding that there was no jurisdiction was "technically incorrect." But the court below did not stop at jurisdiction. Rather, it went on to deal with the merits of the claim.

The court stated that "there is no evidence that [Young] has been treated any differently than any of the other employees," and found that "there is no evidence as a result of [Young] being a man that somebody took something away from him...." Indeed, Young's counsel conceded that he would "understand if the court rules [against Young] with regards to the sex portion of it." So, the court found that "the evidence is insufficient to make a prima facie case in that regard and the court is going to dismiss" the sex discrimination claim. Because the court there dealt with the merits of the sex discrimination claim, and its findings are not clearly erroneous, we affirm the dismissal of the sex discrimination claim.

## 2. *Race Discrimination*

### A. Prima Facie Case

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1). A Title VII plaintiff has the burden of making a *prima facie* showing that:

1. he belongs to a protected class;

2. he was qualified to do his job;

3. despite his qualifications, his employment situation was adversely affected;

4. his position was filled by someone outside that protected class.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once he has made out this case, discrimination is presumed and the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the adverse job action. The court here held that Young never made out his *prima facie* case, and so the burden never shifted over to the City.

■ Young had, further, produced no evidence of disparate treatment because of race. Ramiro Romo, Young's co-worker, testified that Brown would laugh and talk more with the Blacks in the office than with the whites. But the court correctly found that laughing in the office has no bearing on terms and conditions of employment, and is not evidence of disparate treatment.

### B. Direct Evidence

■ Young points out that, because he introduced *direct* evidence of discrimination, he need not meet the *McDonnell Douglas* test, but the burden should shift directly over to the City. *Trans World Airlines v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523, 533 (1985). He argues that Brown referring to him as a "white token" and a "white faggot" constitutes direct evidence of race discrimination sufficient to bypass *McDonnell Douglas*. If those remarks do constitute direct evidence of discrimination, then the burden should shift to the City to show a legitimate, non-discriminatory reason for firing Young.

It is difficult to determine whether racial remarks, taken alone, can constitute direct evidence of discrimination. This court has implied that calling an employee a "nigger" would be direct evidence of race discrimination. *Kendall v. Block*, 821 F.2d 1142 (5th

Cir.1987). But the Eleventh Circuit has held that calling older employees "little old ladies," "old farts," "old bastards," and "old crows" was circumstantial, not direct, evidence of discrimination. *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1558 (11th Cir.1988). We need not decide today whether Brown's "white token" remark would fall under *Kendall* or *Castle.*

The district court found that, assuming no more witnesses were called, the City had articulated non-pretextual, non-discriminatory reasons for firing Young: he was gone often from the office, slept at his desk, violated office procedure, and shirked direct requests from his supervisors. So, whether or not Young had made the burden of proof shift by introducing direct evidence, the City met that burden.

### C. Racist Animus

■ Young also argues that Brown's comments show a racist animus, and for that reason *McDonnell Douglas* should not apply. He relies on *Walsdorf v. Board of Commissioners*, 857 F.2d 1047 (5th Cir. 1988), which gave Title VII relief to a woman who was not promoted because of her gender. The supervisor said about the plaintiff: "ain't no bitch going to get this job." He also testified that "women should remain at home 'to make the beds and cook the food and, you know, do the things that's necessary.'" Given his blatant sexism, the court found that his discriminatory animus implicated Title VII. But the evidence in this case simply does not rise to *Walsdorf's* level. Young did not prove a racist animus sufficient to bypass *McDonnell Douglas.*

### D. Weighing the Evidence

■ There is some dispute as to whether the court granted an involuntary dismissal

under Fed.R.Civ.Pro. 41(b) or a directed verdict under Fed.R.Civ.Pro. 50(a) on this issue. It seems the City moved for a Rule 41(b) dismissal, but the court stated that it would "instruct a directed verdict." If this is a Rule 41(b) dismissal, then the court is free to make credibility determinations and weigh evidence; if it is a Rule 50(a) directed verdict, then all credibility choices should be resolved in favor of Young, the non-movant.

Young argues that the court impermissibly resolved internal conflicts in his evidence and passed on the credibility of his witnesses in what was a Rule 50(a) directed verdict. He cites no instance of the court's passing on credibility, but quotes part of the ruling from the bench: ". . . we're talking about an internal conflict within your evidence, which is a law question not a factual dispute, the facts are that that's probably a law question for the court."

Conflicts in the evidence are generally questions for the jury. *U.S. v. Ortega–Chavez*, 682 F.2d 1086, 1091 (5th Cir.1982). But since Young's original sec. 1981 claim is now gone from this suit, only Title VII remains to give Young relief, and Title VII plaintiffs are not entitled to juries.[3] So, because the court below was properly the trier of fact on the Title VII claim, it properly weighed evidence and made credibility choices.

### E. Price Waterhouse

■ Just a few days before this case was tried, the Supreme Court decided *Price Waterhouse v. Hopkins*, —— U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). There, the Court held that if an employer considers both legitimate and illegitimate factors in making an employment decision, then

---

**3.** The relief available in a Title VII action is purely equitable, not legal. *Carroll v. General Accident Ins. Co. of America*, 891 F.2d 1174, 1177 (5th Cir.1990). For that reason, Title VII plaintiffs are not entitled to a jury trial, but instead have their causes heard by the court. *Great American Federal Savings & Loan Assoc. v. Novotny*, 442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957, 965–66 (1979) (dictum); *Johnson v. Georgia Highway Express, Inc.*, 417

F.2d 1122, 1125 (5th Cir.1969); *Ward v. Texas Employment Comm.*, 823 F.2d 907, 908 (5th Cir.1987). For a general discussion of the background and fairness of that policy, *See*, Note, *Relief for Hostile Work Environment Discrimination: Restoring Title VII's Remedial Powers*, 99 Yale L.J. 1611 (1990); Comment, *Right to Jury Trial in Suits for Back Pay: Title VII or Section 1981?*, 12 Mem. St. U.L.Rev. 355 (1982).

the employer must prove by a preponderance of the evidence that it would have made the same decision even without the illegitimate factor. But to make this burden shift to the employer, the employee must show that "the employer *actually relied on* [a protected factor] in making its decision." —— U.S. at ——, 109 S.Ct. at 1791, 104 L.Ed.2d at 288.

The majority opinion in *Price Waterhouse* declined to define what, taken alone, would satisfy the plaintiff's burden, but Justice O'Connor's concurring opinion gives some guidance: "[S]tray remarks in the workplace ... cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate concerns." —— U.S. at ——, 109 S.Ct. at 1804, 104 L.Ed.2d at 305. By this standard, the "white tokens" and "white faggots" remarks would not be enough to shift the burden to the City.

### 3. *Age Discrimination*

■ Young was 55 years old when he was terminated, and he alleges he was replaced by someone under 40. The court below directed a verdict for the City on Young's claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*[4], on the grounds that Young had failed to make out a *prima facie* case of age discrimination. A *prima facie* case under the ADEA includes: (1) that plaintiff was discharged; (2) that he was qualified for the position; (3) that he was within a protected class at the time of discharge; (4) that he was replaced by someone outside the protected class, or (5) replaced by someone younger, or (6) show otherwise that his discharge was because of age.[5] *Bienkowski v. American Airlines*, 851 F.2d 1503, 1504–05 (5th Cir.1988). Once the plaintiff makes that case, the burden shifts as in *McDonnell Douglas*, to

the defendant to rebut the presumption of discrimination.

There is dispute as to who replaced Young. The City argues that various employees took over his duties as a stop-gap measure, but he was ultimately replaced by James Lynch, a man over 40. Young argues that he was replaced at once by Horace White, a man under 40. The district court found that Young had not met his *prima facie* burden, given that other employees in the section also took over parts of Young's duties. The court did not address whether the City rebutted any presumption of discrimination that might have arisen.

The ADEA, unlike Title VII, specifically provides for jury trials. 29 U.S.C. § 626(c)(2). Because Young did present evidence of White assuming his duties, we find that he was entitled to a jury verdict on this issue. The evidence opposing the directed verdict is substantial and of such a quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might reach different conclusions. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969). As such, we reverse the directed verdict of the ADEA claim and remand for a new trial on this issue. That new trial is to address age discrimination only, and should not include any allegations of race or sex discrimination.

### 4. *Conspiracy*

■ Young at trial alleged that the City was guilty of state law conspiracy to discriminate against him on the basis of sex, race and age, and had deprived him of his Constitutional rights under color of law in violation of 42 U.S.C. § 1983. After having dismissed the sex, race and age discrimination claims, the district court dismissed the sec. 1983 and conspiracy claims, reasoning that since there were no underlying illegal activities, the sec. 1983 and conspiracy claims "have no basis in law either."

---

**4.** 29 U.S.C. § 623(a)(1) provides: "It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual ... because of such individual's age."

**5.** The "protected class" includes people over the age of 40.

Because the age discrimination claim is now revived, it can serve as a legal basis for the sec. 1983 and conspiracy claims. As such, we reverse the court's dismissal of the sec. 1983 and conspiracy claims insofar as they are based on age discrimination.

### CONCLUSION

Young simply failed to meet his burden of proof as to sex and race discrimination. Further, even if he had made out *prima facie* cases and raised a presumption of discrimination, the City introduced evidence sufficient to rebut that presumption. But Young raised enough evidence to get to a jury on the issue of age discrimination, and that issue can serve as a legal basis for the sec. 1983 and conspiracy claims. For these reasons and those stated above, we AFFIRM the judgment of the trial court in part, and REVERSE in part and REMAND for further proceedings consistent with this opinion.