Schequita S. UPSHAW, Plaintiff,

v.

The DALLAS HEART GROUP, A PROFESSIONAL ASSOCIATION, d/b/a The Dallas Heart Group, Defendant.

No. CA 3–96–CV–0599–R.

United States District Court,
N.D. Texas,
Dallas Division.

April 14, 1997.

998

Kelly Haze Kolb, Burleson Pate & Gibson, Dallas, TX, Robert Dayton Royse, Jr., Royse & Friedman, Dallas, TX, for plaintiff.

Mary Rossi Ritter, Storey Armstrong Steger & Martin, Dallas, TX, James Randall Nelson, Locke Purnell Rain Harrell, Dallas, TX, for defendant.

## *MEMORANDUM OPINION AND ORDER*

BUCHMEYER, Chief Judge.

Now before this Court is Defendant's Motion for Summary Judgment. For the reasons stated below, the Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND

The Dallas Heart Group ("DHG") is a professional association engaged in the providing of medical services in the north Dallas area. Plaintiff Upshaw was hired by DHG on August 30, 1994 as a front desk secretary and scheduler. Upshaw was terminated from her employment with DHG on February 16, 1995. Upshaw's duties consisted of scheduling patient appointments, answering the telephone, taking messages and paging doctors with messages. While at DHG, Upshaw was primarily assigned to work with Dr. Underwood, although all three front desk personnel performed all of the above-referenced job duties for all of the doctors. Plaintiff's primary contact and supervisor was Carolyn Simmons, DHG's Director of Operations. It was Simmons who ultimately fired Upshaw.

In early January 1995, Simmons was approached by Dr. Underwood regarding his displeasure with the performance of Upshaw. He told Simmons that patients had complained to him about Upshaw's unprofessional behavior. He also reported that he was having problems receiving his messages and mail as well as with his schedule—all of which were Upshaw's responsibility. On January 31, 1995 Simmons met with Upshaw to discuss her job performance, patient complaints, and Dr. Underwood's concerns. Approximately two weeks later, Simmons fired Upshaw, telling her that she was being discharged for "poor job performance and violating office policies."

## II. ANALYSIS

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure allows summary judgment only where there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law.[1] All reasonable doubts and inferences must be decided in the light most favorable to the party opposing the motion.[2] Indeed, as long as there appears to be some evidentiary support for the disputed allegations, the motion must be denied.[3]

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact.[4] Where the non-moving party bears the burden of proof on a

---

1. Fed. R. Civ. P. 56(c) (1994).

2. *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640 (5th Cir.1985).

3. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);

*Coke v. Gen. Adjustment Bureau*, 640 F.2d 584, 595 (5th Cir.1981) (en banc)).

4. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986).

claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing that there is an absence of evidence to support the nonmoving party's case.[5] Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and—by its own affidavits or by depositions, answers to interrogatories, and admissions on file—set forth specific facts showing a genuine issue for trial.[6] Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7]

Because cases involving claims of employment discrimination involve nebulous questions of motivation and intent, summary judgment is usually considered an inappropriate tool for resolving these claims.[8] However, if the defendant is able to present strong evidence of a legitimate nondiscriminatory reason for its actions, and the plaintiff is unable to counter with additional evidence of pretext, summary judgment may properly be granted.[9]

## B. Title VII: Race Discrimination

In order to establish a claim of race discrimination pursuant to Title VII, the plaintiff first bears the burden of proving a prima facie case of discrimination by a preponderance of the evidence.[10] The burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."[11] Finally, the plaintiff must prove with substantial evidence that the reasons offered by the defendant were not its true reasons, but were instead pretext for discrimination.[12] The ultimate burden of persuading the trier of fact of the defendant's intentional discrimination remains with the plaintiff at all times.[13]

There are two methods by which the plaintiff can shift the burden to the defendant under Title VII: by offering direct evidence of discrimination or by establishing an indirect (or inferential) case.[14] Upshaw's claim fails under either approach. If there is direct evidence that an employer placed substantial negative reliance on an illegitimate criterion in reaching an employment decision, resort to inferential methods of proof is unnecessary.[15] Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption.[16] In *Price Waterhouse v. Hopkins*, the Supreme Court indicated the kind of comments that constitute direct evidence of gender discrimination. These include such statements referring the plaintiff as "macho;" another suggesting that she "overcompensated for being a woman;" a third advising her to take "a course at charm school;" and a fourth advising her to "walk more femininely, talk more femininely, dress more femininely ... and wear jewelry."[17] These statements directly suggest the existence of bias because the offending comments cannot reasonably

**5.** *Id.* at 325, 106 S.Ct. at 2553–2554.

**6.** *Id.* at 324, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby Inc.,* 477 U.S. at 256, 106 S.Ct. at 2514.

**7.** *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

**8.** *Thornbrough,* 760 F.2d at 640.

**9.** *McDonnell Douglas,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668; *See Enplanar, Inc. v. Marsh,* 11 F.3d 1284, 1295 (5th Cir.1994), *reh'g denied,* 19 F.3d 17, *cert. denied,* 513 U.S. 926, 115 S.Ct. 312, 130 L.Ed.2d 275 (1994); *Armstrong v. City of Dallas,* 997 F.2d 62, 66–67 (5th Cir.1993).

**10.** *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–2747, 125 L.Ed.2d 407 (1993); *Texas Dept. Of Community Affairs v.*

*Burdine,* 450 U.S. 248, 252–253, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207 (1981).

**11.** *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

**12.** *Hicks,* 509 U.S. at 506, 113 S.Ct. at 2746–2747.

**13.** *Id.*

**14.** *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1085 (5th Cir.1994).

**15.** *Id.*

**16.** *Davis,* 14 F.3d at 1085; *Brown v. East Mississippi Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir.1993), *reh'g denied,* 995 F.2d 225 (1993).

**17.** 490 U.S. 228, 235, 109 S.Ct. 1775, 1782, 104 L.Ed.2d 268 (1989).

be interpreted as anything other than a reflection of bias—either racial or gender-based.

■ The "evidence" adduced by Upshaw is of an altogether different and less compelling character. Even after viewing the evidence in the light most favorable to Upshaw, and even after giving Upshaw the benefit of all reasonable inferences, this Court is unpersuaded. Upshaw has not produced competent summary judgment evidence of even one stray remark or comment that could be considered facially discriminatory. Upshaw offers only two statements as direct proof that she was fired solely on the basis of her race. First she offers her own testimony that she was told by Dr. Underwood's secretary that Dr. Underwood told her to "get that nigger rap music off" of the telephone hold. Because this statement is double hearsay and not admissible under any exception, it is barred from being considered by this court.

Even if this statement was admissible, it is not direct evidence that Upshaw was fired for racial reasons. As noted by the Fifth Circuit, "it is difficult to determine whether racial remarks, taken alone, can constitute direct evidence of discrimination." [18] The Plaintiff argues that Underwood's comment shows a racist animus, and for that reason *McDonnell Douglas* should not apply. However, the Fifth Circuit concluded that where the evidence consisted of only two comments employing racist terms, the plaintiff did not prove a racist animus sufficient to bypass *McDonnell Douglas*.[19] Similarly, Underwood's alleged sole "nigger" comment, while abhorrent, is not sufficient to prove a racial animus.[20]

■ Nor is this comment direct evidence of discrimination sufficient to bypass *McDonnell Douglas*. In order for a race-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that race was an impermissible factor in the decision to terminate the employee.[21] To rise above the level of a "stray remark" and constitute direct evidence of discrimination, a remark must: "(1) be made by the decision maker or one whose recommendation is sought by the decision maker; (2) be related to the specific employment decision challenged; and (3) be made close in time to the decision." [22] The Plaintiff does not assert that she was fired for playing "nigger music." Therefore, this comment in no way relates to her termination and is irrelevant in proving discrimination.

■ Upshaw also offers a second statement allegedly made by her supervisor Carolyn Simmons as direct evidence of racial discrimination. However, this statement is inadmissible hearsay and is completely unreliable, Upshaw offers the testimony of co-worker Sandra Foreman who claims to have been told by another co-worker, Stacey Kyro, that Kyro overheard Simmons say that Upshaw was fired because "she sounded too black," and that she would be "padding" Upshaw's personnel file to justify her termination on nonracial grounds. In addition to being inadmissible double hearsay, the evidence is unreliable as it is contradicted by Kyro's own testimony in which she admits that she did not know that Simmons was referring to Upshaw, and that she had never heard Simmons make a comment about "padding" anyone's file. In short this Court finds Upshaw's proffered "direct evidence" unconvincing. Accordingly, the Plaintiff must establish its burden under *McDonnell Douglas* to defeat summary judgement.

**18.** *Young v. City of Houston*, 906 F.2d 177, 180 (5th Cir.1990).

**19.** *Young*, 906 F.2d at 181 (Plaintiff's supervisor referred to him as a "white faggot" and "token white").

**20.** *See e.g. Brown v. East Mississippi Electric Power Assoc.*, 989 F.2d 858, 861 (5th Cir.1993) (holding that the employer's routine use of racial slurs constitutes direct evidence that racial animus was a motivating factor in the contested disciplinary decisions.)

**21.** *E.E.O.C. v. Texas Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir.1996).

**22.** *Lo v. Federal Deposit Ins. Corp.*, 846 F.Supp. 557, 564 (S.D.Tex.1994) (citing *Turner v. North American Rubber, Inc.*, 979 F.2d 55, 59 (5th Cir.1992)).

Because direct evidence of employment discrimination is rare, courts have devised indirect or inferential methods of proving such discrimination.[23] The three-step *McDonnell Douglas–Burdine* "minuet" structures the process of proving disparate treatment inferentially, rather than directly.[24] The three steps are: (1) the plaintiff must first prove—by a preponderance of the evidence —a *prima facie* case of disparate treatment; (2) if the plaintiff is successful, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for its decision, and (3) if that is done, the plaintiff may attempt to demonstrate that the defendant's proffered explanation is pretextual.[25] At the end of the dance, however, the plaintiff is ultimately saddled with the burden of proving that a violation of Title VII occurred.[26]

To establish a *prima facie* case inferentially the plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was terminated despite her qualifications; and (4) the position was either held open or given to someone not a member of the protected class.[27] By establishing a *prima facie* case, the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against her. Upshaw has established a *prima facie* case of race discrimination.[28]

Because Upshaw has established a prima facie case of discrimination, the burden then shifts, allowing the Defendant to rebut this presumption by articulating a legitimate non-discriminatory reason for its employment decision.[29] The employer's burden is one of production only and the Court should not assess the credibility of the stated reason.[30]

Defendant sets forth its legitimate non-discriminatory reasons for terminating Upshaw in its competent summary judgment evidence.[31] Both Underwood and Simmons testified that

Upshaw was terminated due to poor job performance. The Defendant maintains that it had received complaints about Upshaw's performance from both patients and staff. Therefore, the Court finds that the Defendant has satisfied the second step of the *McDonnell Douglas–Burdine* burden shifting scheme, thus rebutting the presumption of discrimination created by Upshaw's *prima facie* showing.

While Defendant has successfully rebutted Plaintiffs *prima facie* case of discrimination, Plaintiff can still escape summary judgment by demonstrating that the reasons advanced by Defendant are simply pretextual. In order to raise a factual issue as to pretext, Plaintiff must present evidence establishing that not only were the enunciated reasons for her demotion and her discharge false, but

23. *See e.g. Davis*, 14 F.3d at 1087.

24. *Id.*

25. *McDonnell Douglas*, 411 U.S. at 793, 93 S.Ct. at 1820.

26. *See Hicks*, 509 U.S. at 506, 113 S.Ct. at 2746–2747; *Davis*, 14 F.3d 1082

27. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. In the case of an adverse employment decision, a plaintiff must establish that (1) he is a member of a protected class; (2) he was qualified; (3) he was adversely affected by an employment decision; (4) a comparably situated person outside of the protected class was treated differently. *Frazier v. Garrison I. S.D.*, 980 F.2d 1514, 1526 (5th Cir.1993).

28. DHG argues that Plaintiff has failed to establish the fourth element in that no one was hired to replace Upshaw, Upshaw responds that although no one was *hired* to replace her, a receptionist was *transferred* from another DHG office to fill the vacancy and the replacement hired for her was in fact white. The Court finds that this is merely a matter of semantics and the Plaintiff has made out a *prima facie* case.

29. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

30. *Hicks*, 509 U.S. at 508–509, 113 S.Ct. at 2747–2748.

31. Plaintiff objects to the summary judgment evidence submitted by Defendant as being improperly based on hearsay. Although Underwood's statement may not be based on his personal knowledge of the complaints made about Upshaw, the Defendant does not offer those statement for the truth of the existence of the complaints, but rather, they are offered as Underwood's and Simmon's belief that these complaints occurred as proof of their motive for terminating Upshaw. Accordingly those statements are not hearsay. *See* Fed.R.Evid. 801(c); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1048 n. 4 (5th Cir.1996).

also that they operated as a pretext for discriminatory animus.[32] If the evidence put forth by the plaintiff to rebut the employer's reasons is not substantial, a jury cannot reasonably infer discriminatory intent.[33] Therefore, Upshaw must submit substantial evidence of "sufficiently egregious" facts to overcome the inference that Defendant's state reason for discharging Upshaw was not pretext for discrimination.[34]

As evidence of her job competency, the Plaintiff offers the testimony of two former co-workers. Robinson testified that although Simmons did express her concerns about various problems that had been reported to her by the doctors, never did she specifically identify Upshaw as the cause of those problems. Furthermore, Robinson testified that it was not possible for Dallas Heart Group to determine which of the three was the cause of the problems because all three performed the same job duties for each of the physicians. Plaintiff also offers the testimony of Sara Williamson, who stated that Upshaw was an "exemplary employee who at no time during our employment relationship required any warnings for sub-par performance," and that no one ever communicated any problems with Upshaw to her. However, Williamson and Upshaw's "employment relationship" lasted all of two weeks, and Upshaw admits that she never actually reported to Williamson.

■ Finally, Upshaw argues that DHG's failure to follow its disciplinary policies in dealing with her "performance problems" suggests that this reason for firing her was actually a pretext for discrimination. DHG's discipline policy provided that an employee would first get an oral warning, then a written warning and then a day off without pay before termination for performance related deficiencies. While it is true that Upshaw was never ordered to take a day off without pay, she was given notice of the complaints and was given a warning. A defendant's failure to follow its own policy is not probative of discriminatory animus in the absence of proof that the plaintiff was treated differently than other non-minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact.[35] Thus, DHG's alleged failure to follow its written disciplinary procedures is not substantial evidence of its discriminatory intent.

■ The evidence offered by Plaintiff simply is not sufficient to establish that the Defendant's proffered reasons for terminating Upshaw are false. But even if plaintiff could prove that she was not fired for incompetence, she must also prove that she was fired for discriminatory reasons. The evidence offered by Plaintiff to prove that her termination was motivated by a discriminatory animus is no more compelling.

As discussed above, the two racially tainted statements offered by Plaintiff as proof of discriminatory animus are inadmissible hearsay and therefore cannot be considered by this Court to refute Defendant's summary judgment evidence. Upshaw also offers as proof of discrimination that she, and not her white co-worker, was asked by a DHG doctor to assist the medical records secretary. This allegation by itself does not amount to even a scintilla of evidence that Upshaw was fired because of her race. In fact, Upshaw could not recall any instances of discrimination directed towards her while at DHG. Even viewing the evidence in a light most favorable to the Plaintiff, all Upshaw has presented is her subjective belief that she was fired because she is black. However, a plaintiffs subjective belief of discrimination, however genuine, cannot alone be the basis for judicial relief.[36]

Because Plaintiff has not offered sufficient evidence demonstrating that Defendant's proffered reason was false, much less any

---

**32.** *Hicks,* 509 U.S. at 515, 113 S.Ct. at 2751–2752; *Udo v. Tomes,* 54 F.3d 9, 13 (1st Cir.1995).

**33.** *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996).

**34.** *Brown v. GSC Logic,* 82 F.3d 651, 658 (5th Cir.1996).

**35.** *See Irchirl v. Sears, Roebuck & Co.,* 49 Fair Empl Prac. Cas. (BNA) 989, 990, 1989 WL 81056 (S.D.Tex.1989).

**36.** *Sherrod v. Sears, Roebuck & Co.,* 785 F.2d 1312, 1316 (5th Cir.1986); *Lo v. FDIC,* 846 F.Supp. 557, 563 (S.D.Tex.1994).

evidence that it was instead illegitimate discrimination that motivated her discharge from DHG, Plaintiff's race discrimination claim arising from her termination fail as a matter of law. Accordingly, summary judgment is **GRANTED** in favor of defendant DHG.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED**. It is so **ORDERED.**