**Richard STANLEY Plaintiff,**

v.

**UNIVERSITY OF TEXAS MEDICAL BRANCH, GALVESTON, TEXAS Defendant.**

**No. CIV.A.G–02–508.**

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 15, 2003.

---

Mark E. Roberts, Attorney at Law, Houston, TX, for Plaintiff.

Craig H. Russell, Assistant Atty Gen., Austin, TX, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INVITING A MOTION FOR SANCTIONS

KENT, District Judge.

Plaintiff Richard Stanley ("Plaintiff") brings this action against Defendant University of Texas Medical Branch ("UTMB" or "Defendant") alleging that UTMB violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, by perpetuating a hostile work environment toward African–American males and by retaliating against him. Now before the Court is Defendant's Motion for Summary Judgment, and Plaintiff's timely Response thereto. After careful thought and considerable deliberation, the Court concludes that Defendant's Motion must be **GRANTED** for the reasons articulated below.

### I. FACTUAL BACKGROUND

Plaintiff was hired by UTMB as a licensed, registered nurse at the Larry Gist State Jail in May of 1997. At the time he was hired, Plaintiff was the only male nurse at the Larry Gist State Jail. Unfortunately, the Parties' relationship quickly became strained by what UTMB perceived to be inappropriate behavior by Plaintiff. On April 9, 1998, Plaintiff was placed on six months of probation for eight cited instances, most of which were charges related to either insubordination or inappropriate behavior toward female coworkers. Then, on December 3, 1998, Plaintiff was again placed on six months probation for unprofessional behavior.

On November 19, 2001, Plaintiff refused to administer insulin to a known insulin dependent patient, despite the fact that the patient had a "300+ finger stick Glu-

cometer reading," and that his supervisor ordered him to give the patient the shot. Following an investigation, Plaintiff was suspended for three days without pay for refusing to follow his supervisor's order, and for reckless endangerment of the patient's health; additionally, Plaintiff was warned that future infractions would result in "further disciplinary action up to and including termination of your employment." Specifically, Danny Mott informed Plaintiff of the reasons for his suspension by letter, stating:

> Per your own admission, your refusal was based not on concerns for the patient's welfare, but rather upon your own desire not to lose credibility with the patient. As a result of your actions to place your credibility before the patient's welfare you placed a patient at potentially grave risk. Your refusal to act is in violation of UTMB Policy, MCHR 3.10, page 3 of 8 # 10 INTENTIONAL FAILURE TO OBEY ANY LEGAL ORDER FROM A PROPER AUTHORITY, # 16 INSUBORDINATION, page 4 of 8, # 3 RECKLESS ENDANGERMENT, and # 12 MISTREATMENT OF OFFENDERS, CLIENTS OR OTHERS. Not only is this a violation of UTMB Policy and Procedures, it is a violation of LVN Rules of Licensure and Practice, to wit: 1) Failure to assess or initiate a nursing intervention (239.11, 27–A) and 2) Insubordination (239.11, 27–J).

Plaintiff does not dispute the actual charges that Danny Mott makes. Rather, Plaintiff responds that he disregarded his supervisor's order because he thought that an hour lapse in between the time medication was ordered and the time medication is administered required a new order from the treating physician.

Finally, on December 21, 2001, Nurse Linda Northen filed a sexual harassment

complaint against Richard Stanley. The gravamen of Northen's allegations is accurately illustrated by the following excerpt from her complaint:

> At this juncture in time Mr. Stanley initated [sic] a one-sided conversation with me. Several different approaches were used to refer to my sexual orientation such as, "What are you buying for your significent [sic] other for Christmas?" and "What are you buying her?" "Maybe you and she will just have a special time together." I was did not [sic] address any of these inquiries which included other verbage [sic] indicating that my sexual orientation might be with a woman. I told Mr. Stanley to sit down and shut up. He responded by leaning over me while I was sitting at my desk and winked at me repeatedly while grinning widely. During this time his face was positioned very close to mine . . . .

UTMB conducted an investigation and found that Northen's allegations were meritorious.[1] Based on the results of the investigation, coupled with the November 19, 2001 incident, Danny Mott wrote a letter to Plaintiff on January 16, 2002 informing him that UTMB intended to terminate his employment based on the November 19, 2001 and December 21, 2001 episodes. Additionally, the letter explained that Plaintiff had an opportunity to defend himself at a hearing the following day, at 10:00 a.m., and that a final decision regarding his employment would be made following the hearing.

Plaintiff failed to appear at the hearing and tendered a letter of resignation on January 17, 2002. Plaintiff contends that he called Mott on January 17, 2002 to explain that he was running late for the hearing. In his sworn affidavit, Plaintiff claims that Mott told him that his presence at the hearing was not necessary. Further, Plaintiff disputes Mott's contention that he resigned voluntarily because he alleges that he sent the resignation letter only after Mott requested it.

Following his termination, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In his charge, Plaintiff checked the "race" and "sex" boxes under the "Cause of Discrimination Based On" category, but did not check the "retaliation" box. In its entirety, Plaintiff's charge of discrimination states:

> 1. I was forced to resign (constructive discharge) after more than four years of satisfactory service as an LVN. I am employed by the University of Texas Medical Branch and assigned to the Larry Gist State Jail in Beaumont, Texas. I was falsely accused of sexually harassing a white female. She made a false complaint against me and as a direct result of her complaint, I was discharged and without the benefit of a full investigation. I was the only black male LVN in the unit.
>
> 2. During my exit interview, I was asked if I felt strange working in a female dominated field. I feel that because I am a black male the white female was told to set me up so I could get fired. I deny that I sexually harassed the white female.
>
> 3. I was discriminated against because of my race and sex in violation of Title VII of the Civil Rights Act of 1964, as Amended.

The EEOC issued a Right to Sue letter and Plaintiff brought the instant action alleging that he was discriminated against based on his gender and race, and that he

---

**1.** During the investigation, Plaintiff admitted to making the remarks that were the basis for Northen's complaint. However, Plaintiff contends that he did not intend to harass Northen.

was retaliated against. After reviewing the evidence attached to Plaintiff's twenty-page Response, the following is all of the evidence the Court can find that even relates to Plaintiff's claims: (1) Plaintiff's sworn affidavit, paragraph four, which states: "I was the only male assigned to work in the area I was employed. Being the only male employee in this area, I was often called upon to move heavy objects, as well as patients, that required more physical dexterity than most of the female employees could provide."; (2) Plaintiff's sworn affidavit, paragraph thirteen, which states: "There was no other males that work in unit [sic] that I work in, as a Nurse. All of the Nurses were female and most of them were white. On several occasions I observed that new employees with less experience at the facility were allowed preferential shifts. When I commented on this, and then on the fact that no black employees were given the same opportunity, no action was taken to allow black employees the same opportunity."; (3) Plaintiff's sworn affidavit, paragraph fourteen, which states: "On several occasions during this time I filed a formal grievance about the working conditions at the unit and my concern that with inadequate breaks and staffing issues that patients were placed at risk. This grievance was never responded to prior to my termination."[2]; (4) Plaintiff's sworn affidavit, paragraph fifteen, which states: "I was not treated in the same manner as female employees. I was not given the same or proper time to take restroom brakes [sic]. Often I would be docked lunchtime when I took a restroom brake [sic]."; (5) Plaintiff's sworn affidavit, paragraphs eighteen and nineteen, which state: "During the occurrence I was accused of sexual harassment, I engaged in a conversation regarding a patient/inmate and indicated that he was a homosexual. I did not make this statement in a derogatory manner. Ms. Northen then commented by asking me if I like to be called a 'Nigger,' and I responded that I did not equate private relationships equal to degrading comments regarding my race."; (6) Plaintiff's sworn affidavit, paragraph twenty-one, which states: "Ms. Northen's use of the word 'Nigger' was consistent with the treatment of Black/African–American workers at the Gist unit medical facility. In addition, the failure to follow up and equally address such serious accusations regarding race is further consistent with the attitude of racial issue [sic] for Black/African–American nurses at this particular unit."; and (7) Brenda Franklin's, an African–American nurse at the Gist State Jail Facility, sworn affidavit, paragraph two, which states: "While employed by the University of Texas Galveston Medical Branch, Gist Unit, I experienced and observed other Black/African–American employees experience unequal treatment compared with white medical employees."

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When one party moves for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute

---

**2.** The Court notes that Plaintiff failed to submit evidence of the grievance he filed.

between the parties will not defeat an otherwise properly supported motion for summary judgment; rather, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. Nevertheless, if the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

## III. ANALYSIS

*A. Plaintiff's hostile work environment and retaliation claims are barred because he did not exhaust his administrative remedies.*

In his First Amended Complaint, Plaintiff asserts that Defendant is liable because it perpetuated a hostile work environment, which subjected him to impermissible race and gender discrimination. Additionally, Plaintiff alleges that he was retaliated against because he complained to UTMB about its allegedly discriminatory conduct. Defendant responds that Plaintiff's claims should be dismissed both procedurally and on the merits because Plaintiff's charge of discrimination is insufficient, and, assuming *arguendo* that Plaintiff sufficiently notified the EEOC concerning his claims, his claims fail as a matter of law.

■ Before bringing a hostile work environment or retaliation claim, a plaintiff must file a charge of discrimination with the EEOC. *See Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir.1995) ("The filing of an administrative complaint is ordinarily a jurisdictional prerequisite to a Title VII action."); *Young v. City of Houston,* 906 F.2d 177, 179 (5th Cir.1990). Following an investigation by the EEOC, it may issue a Right to Sue letter. Upon receiving a Right to Sue letter, a plaintiff may bring a Title VII suit extending " 'as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge.' " *Fine v. GAF Chem. Corp.,* 995 F.2d 576, 577–78 (5th Cir.1993) (quoting *Terrell v. U.S. Pipe & Foundry Co.,* 644 F.2d 1112, 1123 (5th Cir. Unit B 1981)). "A Title VII cause of action may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could be reasonably be expected to grow out of the initial charges of discrimination." *Fine,* 995 F.2d at 578. This rule is to protect individuals who are not represented by counsel from having their claims dismissed for a technicality. *See id.* However, in *Fine,* the Fifth Circuit held that a plaintiff's charge should not be so liberally construed that a plaintiff does not need to state the basic facts that make up his discrimination claim because a plaintiff does not need legal assistance to merely articulate the facts underlying his claims. *Id.*

■ After reviewing the EEOC charge in the instant matter, the Court finds that it may not consider Plaintiff's hostile work environment or retaliation claims because such claims do not "grow out of" his charge of discrimination. First, Plaintiff's failure to articulate *any facts* concerning retaliation that would have put the EEOC

on notice about the possibility of such, accompanied by his failure to check the retaliation box (he did check the race and gender discrimination boxes), are fatal to his retaliation claim. *See Randel v. U.S. Dep't. of Navy,* 157 F.3d 392, 395 (5th Cir.1998) (holding that a plaintiff could not bring a race discrimination claim because his charge of discrimination was confined to retaliation and disability discrimination); *see also Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 223 (8th Cir. 1994) ("In the present case, Williams' claims of race discrimination are separate and distinct from her claims of retaliation. Not only did Williams fail to check the box for race discrimination, her 1990 EEOC charge and supporting affidavit specifically and unambiguously alleged that Water Works retaliated against her because she had filed a charge with the EEOC in January 1987. The 1990 EEOC charge does not even hint of a claim of race discrimination. This amounts to more than a mere technicality . . . .").

Likewise, *nowhere in his charge* of discrimination did Plaintiff allege *any facts* concerning race or gender discrimination. Simply put, Plaintiff's charge's only allegation is that he was terminated due to a false sexual harassment claim. The Court refuses to accept that merely stating "I was discriminated against because of my race and sex in violation of Title VII of the Civil Rights Act of 1964" is sufficient to exhaust his administrative remedies as to his hostile work environment case; rather, a plaintiff must make specific allegations detailing the allegedly discriminatory treatment he has received. *See Robinson v. Rubin,* 77 F.Supp.2d 784, 792 (S.D.Tex. 1999); *Reno v. Metro. Transit Auth.,* 977 F.Supp. 812, 818–20 (S.D.Tex.1997) (dismissing a plaintiff's sexual harassment claims because they were distinguishable from her sexual discrimination allegations in her charge of discrimination). Otherwise, every plaintiff could always put that one catch-all sentence in their charge to exhaust their administrative remedies, and the EEOC would be left in the dark concerning the substance of plaintiffs' claims-contrary to Title VII's drafters' intentions for the role of the EEOC. Accordingly, for the reasons expressed above, the Court **GRANTS** Defendant's Motion and **DISMISSES WITH PREJUDICE** Plaintiff's hostile work environment and retaliation claims.

*B. Assuming arguendo that Plaintiff did exhaust his administrative remedies. Plaintiff fails to establish a prima facie case of hostile work environment based on either race or gender discrimination.*

■■ To state a hostile work environment claim, Plaintiff must show that: (1) he belonged to a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on his race (or sex, since he alleges both); (4) the harassment affected a "term, condition, or privilege" of his employment, and (5) UTMB knew of the alleged harassment and failed to take prompt steps to prevent such. *Watts v. Kroger, Co.,* 170 F.3d 505, 509 n. 3 (5th Cir.1999) (explaining that when the harassment alleged is from a coworker, Plaintiff must still establish the fifth element). Harassment is only actionable under Title VII if it is "so 'severe or pervasive' as to 'alter the conditions of employment and create an abusive working environment.'" *Faragher v. Boca Raton,* 524 U.S. 775, 786, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (some internal quotations omitted)). In determining whether a working environment is hostile or abusive, particular acts are not viewed in isolation; rather, all circumstances must be considered, including "the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). Thus, " 'mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee' would not sufficiently alter terms and conditions of employment to violate Title VII." *Faragher*, 524 U.S. at 787, 118 S.Ct. at 2283 (quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir.1971)).

▮▮▮ After scouring the record, the Court fails to find any evidence of a hostile work environment based on gender discrimination that can be considered severe and pervasive; surely, not receiving equal restroom breaks and being asked to move heavy objects does not rise to the level of an actionable Title VII claim. As to his hostile work environment claim based on racial harassment, the true gravamen of Plaintiff's complaint is that Northen used the word "nigger" in front of him.[3] However, one isolated event is not sufficiently severe and pervasive to create an objectively hostile work environment. *See Diggs v. Burlington Northern and Santa Fe Ry.*, 2001 WL 588856, at *4–5 (N.D.Miss. Jan.23, 2001); *Moore v. W.H. Smith Hotel Servs.*, 1999 WL 350108, at *3 (E.D.La. May 28, 1999); *Grant v. UOP, Inc.*, 972 F.Supp. 1042, 1047 (W.D.La. 1996), *aff'd*, 122 F.3d 1066, 1997 WL 464484 (5th Cir.1997); *McCray v. DPC Indus.*, 942 F.Supp. 288, 292 (E.D.Tex. 1996) (citing *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir.1994)); *see also Vaughn v. Pool Offshore Co.*, 683 F.2d 922, 924–25 (5th Cir.1982). Moreover, reference to this highly charged epithet by Plaintiff is

rankly misleading. Northen was merely suggesting that its use would be as offensive to Plaintiff as his obvious harassment of her gender preference was to her. To even suggest otherwise is both deceitfully self-serving and contextually insupportable. Therefore, based on the aforementioned analysis, the Court **GRANTS** Defendant's Motion and **DISMISSES WITH PREJUDICE** all of Plaintiff's hostile work environment claims.

*B. Assuming arguendo that Plaintiff did exhaust his administrative remedies, Plaintiff's retaliation claim must fail because he cannot show that UTMB's legitimate, non-retaliatory reasons for terminating him were mere pretext.*

▮▮▮ The burden-shifting analytical framework that applies in a Title VII disparate treatment action also applies to claims alleging unlawful retaliation based on circumstantial evidence. *See Long v. Eastfield Coll.*, 88 F.3d 300, 304–05 (5th Cir.1996). To establish a *prima facie* case for unlawful retaliation, Plaintiff must prove that: (1) he engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) there is a casual link between the protected activity and the adverse employment action. *Id.* at 304. If Plaintiff proves his *prima facie* case, which the Court now assumes *arguendo*, the burden shifts to UTMB to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If UTMB is able to offer such, the burden then shifts back to Plaintiff to prove that the articulated reason is mere pretext for unlawful retaliation. *Id.*

▮▮▮ In the instant case, Plaintiff admits that he made the comments that were

---

**3.** Plaintiff submits his affidavit, along with Brenda Franklin's affidavit, which state that African–Americans were not afforded equal treatment by UTMB. Mere conclusory statements are not evidence of discrimination. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1048 (5th Cir.1996).

the basis of his sexual harassment claim—although he disputes that he meant any ill will. Additionally, Plaintiff concedes that he did not follow his supervisor's order that led to his suspension on November 19, 2001. Thus, UTMB's articulated legitimate, non-retaliatory reasons are uncontested. Thus, without any evidence that the aforementioned reasons were mere pretext for unlawful retaliation, other than Plaintiff's own conclusory statements, Plaintiff cannot raise a genuine issue of material fact as to his retaliation claim. Thus, the Court **GRANTS** Defendant's Motion and **DISMISSES WITH PREJUDICE** Plaintiff's retaliation claim against UTMB.

*D. Plaintiff's claims against UTMB for intentional infliction of emotional distress, defamation, and negligent investigation are barred by the Eleventh Amendment.*

██ The Eleventh Amendment bars any claims brought against a state or state agency unless Congress has abrogated the state's immunity or the state has expressly waived its immunity to suit in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). To abrogate a state's immunity, Congress must make its intention to abrogate such immunity "unmistakably clear in the language of the statute." *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985).

██ It is undisputed under Texas law that the Texas Tort Claims Act did not waive Texas's sovereign immunity for intentional torts. *See* Tex. Civ. Prac. & Rem.Code § 101.057(2); *see also Hutchison v. Brookshire Bros., Ltd.,* 205 F.Supp.2d 629, 642 (E.D.Tex.2002) (explaining that Texas's entities are immune from claims for intentional infliction of emotional distress). Obviously, the tort of intentional infliction of emotional distress is an intentional tort. Moreover, defamation is an intentional tort and is likewise barred by the Eleventh Amendment. *See Baldwin v. Univ. of Texas Med. Branch at Galveston,* 945 F.Supp. 1022, 1030 (S.D.Tex.1996) (Kent, J.).

██ Further, the Texas Supreme Court recently held that Texas does not recognize a cause of action for negligent investigation in the context of a wrongful termination lawsuit. *See Texas Farm Bureau Mut. Ins. Cos. v. Sears,* 84 S.W.3d 604, 607–09 (Tex.2002) (declining to recognize a negligent investigation claim because it would "significantly alter" the at-will employment doctrine). Hence, Plaintiff cannot bring and Texas cannot waive its sovereign immunity to a claim that does not exist under Texas law. Last, Plaintiff failed to respond to Defendant's Motion, which laid out the above contentions, with any contrary authority that his claims were not barred by the Eleventh Amendment, and also failed to submit any evidence to support his intentional tort and negligent investigation claims. Thus, for the aforementioned reasons, the Court **GRANTS** Defendant's Motion and hereby **DISMISSES WITH PREJUDICE** Plaintiff's claims for intentional infliction of emotional distress, defamation, and negligent investigation.

## IV. CONCLUSION

For all of the reasons stated above, the Court **GRANTS** Defendant's Motion and **DISMISSES WITH PREJUDICE** all of Plaintiff's claims against UTMB. Additionally, after very carefully and extensively reviewing the evidence in this case, the Court observes that UTMB went to extraordinary extremes to give Plaintiff multiple second chances. Despite his repeated and protracted probations, Plaintiff was unable to maintain professional behav-

ior in his workplace. Normally, in the resolution of unsuccessful discrimination cases, this Court requires each party to bear its own taxable costs, expenses, and attorneys' fees. However, this case appears to be an egregious example of abuse of the legal system. The only potentially actionable claim stems from a coworker's solitary and contextually explainable use of a derogatory term. Despite the inherent offensiveness of such term, the jurisprudence is clear that a coworker's lone use of a derogatory term is not an actionable Title VII claim. Furthermore, UTMB is a remarkably important, benevolent entity mired in a genuine economic crisis. Because of the Texas Legislature's recent budgetary cutbacks, UTMB has had to cut its research budget, staff, and the health care services that it provides to the public, especially indigent care. UTMB does not have endless resources to spend defending utterly meritless lawsuits considering its present circumstances. Furthermore, this Court is one of the busiest in the country and cannot waste its precious judicial resources resolving baseless claims. Thus, the Court gives Defendant leave to submit a Motion for Sanctions, supported by an itemized list of its taxable costs, expenses, and attorneys' fees, by September 5, 2003. If Defendant chooses to submit such, Plaintiff must reply by September 25, 2003 and show cause why he and/or his attorney should not be found individually or jointly and severally liable for UTMB's expenses, costs, and attorneys' fees. Defendant may reply thereto by October 10, 2003. After consideration thereof, the Court will enter a final judgment.

**IT IS SO ORDERED.**