Carla WALTON, et al Plaintiffs

v.

**TOWER LOAN OF MISSISSIPPI,**
et al Defendants

No. CIV.A. 2:03CV181.

United States District Court,
N.D. Mississippi,
Delta Division.

Sept. 28, 2004.

**692**

Robert Bradley Best, Holcomb Dunbar, Oxford, MS, for Plaintiffs.

Sheryl Bey, Baker, Donelson, Bearman & Caldwell, Henry Tobias Coleman, Watkins & Eager, Charles E. Griffin, Griffin & Associates, Randy L. Dean, Wells Marble & Hurst, PLLC, Steven H. Begley, Wells Marble & Hurst, PLLC, Jackson, MS, Thomas Julian Butler, Maynard Cooper & Gale, Birmingham, AL, for Defendants.

### ORDER

ALEXANDER, District Judge.

This cause comes before the court on the motion of plaintiffs Carla Walton, et al., pursuant to 28 U.S.C. § 1447, to remand [22–1] this case to the Circuit Court of Coahoma County. The defendants in this case include corporate and individual "lending defendants," several corporate "insurance defendants," as well as defendant Friedman's Inc. of Savannah, Georgia and its agents ("Friedman's"). Each of these groups of defendants have responded in opposition to the motion to remand, and the court, having considered the memoranda and submissions of the parties, along with other pertinent authorities, concludes that the motion is well taken and should be granted.

On January 23, 2003, the twenty-one plaintiffs herein filed an amended complaint in the Circuit Court of Coahoma County, seeking recovery for fraud and other alleged wrongdoing arising out of lending transactions among the parties. Plaintiffs' claims in this case include now-familiar allegations that, in the course of loaning them money, defendants fraudulently induced them to purchase unneeded and overpriced credit life, property and disability insurance. On May 19, 2003, defendants removed the case to this court on the basis of diversity and bankruptcy jurisdiction, see 28 U.S.C. §§ 1332, 1334. Plaintiffs filed a motion to remand on December 20, 2003, asserting that neither of these jurisdictional bases is applicable.

The court considers first whether diversity jurisdiction exists in this case. Defendants' burden of proving that diversity jurisdiction exists herein is a rather difficult one, considering that all of the twenty-one plaintiffs are Mississippi residents and a large number of the individual and corporate defendants are, likewise, Mississippi residents. Defendants argue, however, that no reasonable possibility of recovery exists against any of these Mississippi defendants and that, as such, these defendants should be dismissed from this action upon a finding of fraudulent/improper joinder.[1]

■ The removing party, which is urging jurisdiction on the court, bears the burden of demonstrating that jurisdiction is proper due to fraudulent/improper joinder. *Dodson v. Spiliada Maritime Corp.,*

---

1. In *Smallwood v. Illinois Central Railroad Co.,* No. 02–60782 (5th Cir. Sept. 10, 2004) (*"Smallwood III"*), the Fifth Circuit, sitting en banc, recently suggested that the term "improper joinder" is a preferable term to the phrase "fraudulent joinder," and this court will follow the Fifth Circuit's suggestion in this regard.

951 F.2d 40, 42 (5th Cir.1992). The Fifth Circuit has stated:

> The burden of persuasion placed upon those who cry "fraudulent joinder" is indeed a heavy one. In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.

*B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981). The Fifth Circuit has reaffirmed that it "is insufficient that there be a mere theoretical possibility" of recovery; to the contrary, there must "at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder." *Travis v. Irby,* 326 F.3d 644, 648 (5th Cir.2003)(citing *Badon v. RJR Nabisco Inc.,* 224 F.3d 382, 386 (5th Cir.2000)).

Based upon a review of the record, it does appear that the claims against several of the resident defendants are barred by a class action certified by the U.S. District Court for the Southern District of Mississippi. *See Smith v. Tower Loan of Mississippi, Inc., et al.,* No. 1:98cv212. Nevertheless, claims remain against several non-diverse defendants, including several resident insurance agents. In arguing that no possibility of recovery exists against any of these resident defendants, defendants rely heavily upon the Fifth Circuit's decision in *Ross v. Citifinancial, Inc.,* 344 F.3d 458, 463 (5th Cir. Aug.29, 2003), wherein the Fifth Circuit affirmed Judge Barbour's finding of improper joinder involving consumer finance claims similar to those in the case at bar. As defendants are aware, however, the *Ross* panel's apparent consideration of "common defenses" such as statute of limitations defenses in the improper joinder context has been called into serious question by Fifth Circuit and U.S. Supreme Court decisions, most particularly *Smallwood v. Illinois Central Railroad Co.,* No. 02–60782 (5th Cir. Sept. 10, 2004) ("*Smallwood III*") and *Chesapeake & Ohio Railway Co. v. Cockrell,* 232 U.S. 146, 34 S.Ct. 278, 58 L.Ed. 544 (1914).

In *Smallwood III,* a majority of the Fifth Circuit, citing *Cockrell,* held that:

> when a nonresident defendant's showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant equally disposes of all defendants, there is no improper joinder of the in-state defendant. In such a situation, the entire suit must be remanded to state court.

*Smallwood III,* Slip op. at 1. Based upon *Smallwood III,* the court concludes that it may not consider many of the improper joinder arguments raised by defendants in this case, including their statute of limitations arguments. It is apparent that many of these defenses, if applicable, would "equally dispose of all defendants" and therefore may not be considered in the improper joinder context.

Defendants also argue that factual weaknesses exist with regard to several of the plaintiffs' claims against several of the non-diverse agents. However, recent Fifth Circuit authority makes it clear that the improper joinder standard is more akin to a 12(b)(6) standard than a summary judgment standard and that, at the improper joinder stage, a plaintiff's burden of producing proof in support of his claims is low. *See McKee v. Kansas City Southern Ry. Co.,* 358 F.3d 329, 336 n. 2 (5th Cir.2004); *Smallwood III,* slip op. at 6. While the court cannot state with any confidence that each of the plaintiffs' claims against each of the Mississippi defendants

has merit, the court is similarly unable to conclude, at this stage of the proceedings, that each of the plaintiffs' claims against each of the Mississippi defendants lacks merit based on the highly deferential *Smallwood III/McKee* standard.

Indeed, *Smallwood III* casts doubt upon whether this court should have even permitted defendants to conduct remand-related discovery regarding the merits of plaintiffs' claims against the nondiverse defendants. A majority of the Fifth Circuit in *Smallwood III* observed that:

> Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry. ... Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity.

*See* slip op. at 6. This language provides few standards to assist district courts in determining whether a particular cases is one of the "hopefully few" cases in which resort to a summary inquiry is necessary.[2] Regardless, it is plain, in light of *McKee* and *Smallwood*, that the improper joinder standard is far more of a pleadings-based inquiry than had commonly been assumed as recently as a year ago. Indeed, it is likewise clear that the improper joinder doctrine, as a whole, is far more limited than had commonly been assumed. Accordingly, while it does appear that several of the plaintiffs herein have rather limited recollections regarding their dealings with several of the Mississippi agents, the court cannot conclude that no reasonable possibility of recovery exists against each of the Mississippi defendants in this case. Defendants' improper joinder arguments must therefore fail.

Friedman's next argues[3] that, even if the court should find that some defendants

---

2. The dissenting judges in *Smallwood III* characterized the majority's observations regarding the limited role of discovery in remand proceedings as constituting "pure dicta" with no precedential value, writing as follows:

> [T]he majority, with no call to do so, addresses procedure and discovery issues that arise in remand proceedings. This writing is fairly unremarkable except that it appears to be written to underscore one side of our precedent. It certainly has no precedential effect. These remarks are pure dicta because no one has made an issue of this subject at any point in these proceedings.

*Smallwood III*, slip op. at 32, n. 32 (Jolly dissenting). This division among the Fifth Circuit judges puts district judges in a difficult position in deciding whether to give precedential value to, or simply to ignore as dicta, the observations of a majority of the Fifth Circuit sitting *en banc*. This division among Fifth Circuit judges may portend an era in which differing fraudulent joinder standards are applied by different panels of the Fifth Circuit, depending upon whether a majority of the panel is made up of members of the majority or dissenting judges in *Smallwood III*.

District courts may find it difficult to ignore the carefully considered comments of a majority of the full Fifth Circuit in *Smallwood III*. This is particularly true considering that the intent of the majority was obviously to fundamentally restate, in certain important respects, the very nature of the improper joinder doctrine. Indeed, as noted previously, the majority even saw fit to give the doctrine a new name. At any rate, *Smallwood III's* observations regarding the nature of the improper joinder inquiry were largely identical to those in *McKee*. Moreover, this court permitted the parties to conduct remand-related discovery in this case, and this division among Fifth Circuit judges on this issue is of only tangential importance in this case.

3. While the defendants primarily present a united front, they alternatively submit separate arguments that the court should retain

were not fraudulently/improperly joined, it should nevertheless find fraudulent *misjoinder* of those plaintiffs asserting claims against it and to enter severances and partial remands accordingly. The court would initially note that the governing legal standards regarding the fraudulent misjoinder doctrine are far from clear. In *Tapscott v. MS Dealer Service Corporation,* 77 F.3d 1353, 1360 (11th Cir.1996), the Eleventh Circuit Court of Appeals held that "egregious" misjoinders of plaintiffs may give rise to a finding of fraudulent/improper joinder so as to give rise to diversity jurisdiction, and the Fifth Circuit appears to have accepted the basis premise of *Tapscott.* In *In Re Benjamin Moore & Company,* 309 F.3d 296, 297 (5th Cir.2002), the Fifth Circuit, citing *Tapscott,* wrote that "it might be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction," but the court provided no guidance as to the circumstances, if any, under which this doctrine should be applied in this circuit. Indeed, the aforementioned observation from the Fifth Circuit constitutes virtually the entire body of Fifth Circuit Court of Appeals jurisprudence regarding fraudulent misjoinder.

Assuming *arguendo* that the Fifth Circuit would explicitly adopt the *Tapscott* rationale in an appropriate case, this court would only be able to accept jurisdiction based on the misjoinder of either plaintiffs or defendants if such misjoinder were "egregious." It is thus apparent that, for *Tapscott* to be applicable, this court would be required to find a level of misjoinder that was not only improper, but grossly improper, even under the lenient standards set forth in Miss. R. Civ. P. 20. Clearly, this is a difficult burden for defendants to meet.

It is true that the Mississippi Supreme Court has recently applied more stringent joinder standards in pharmaceutical and asbestos cases, even in cases filed prior to the February 26, 2004 revision of Miss. R. Civ. P. 20. *See, e.g. Janssen Pharmaceutica, Inc. v. Armond,* 866 So.2d 1092, 1097 (Miss.2004); *Harold's Auto Parts, Inc., et al. v. Flower Mangialardi, et al.,* No.2004–IA–01308–SCT (Miss. Aug.26, 2004). However, the Supreme Court in *Armond* specifically distinguished (and apparently reaffirmed) the more liberal joinder standards adopted by the court in consumer fraud cases such as *American Bankers Ins. Co. v. Alexander,* 818 So.2d 1073 (Miss.2001).[4] In so distinguishing *Alexander,* the Supreme Court in *Armond* noted that consumer fraud cases typically involve lower damages than personal injury cases, thus making it less practicable to try the cases individually. *Armond,* 866 So.2d at 1098.[5] The Supreme Court in *Alexander* found the joinder of literally thousands of

---

jurisdiction over the claims against them alone and remand the remaining claims. Friedman's arguments in this regard are typical.

**4.** One could certainly hope for greater clarity regarding the application of Mississippi's Rule 20, and this court is not necessarily persuaded that differing joinder standards should be applied in consumer finance cases than in any other cases. Regardless, as discussed *infra,* even application of stricter joinder standards in this case would not result in a finding of misjoinder, within the meaning of *Tapscott.*

**5.** The Supreme Court in *Armond* similarly distinguished and re-affirmed more liberal standards of joinder in asbestos cases, but it recently retreated from that position in *Harold's. Harold's* may (or may not) signal that the court will likewise retreat from its application of liberal joinder rules in consumer finance cases at some point in the future. The fact remains, however, that the Court has not done so to date, and, at the present time, the liberal *Alexander* joinder standards remain applicable.

consumer plaintiffs from several different states to be proper under Miss. R. Civ. P. 20, and it would therefore be difficult for this court to conclude that the joinders in this case were improper, much less egregiously so, under the liberal version of Miss. R. Civ. P. Rule 20 which applied at the time the amended complaint was filed in this case.

Even if the Mississippi Supreme Court were to eventually apply stricter joinder standards in consumer fraud cases, this would not necessarily support the application of the fraudulent misjoinder doctrine in the manner urged by Friedman's. Under its broadest interpretation, the fraudulent misjoinder doctrine would seemingly permit defendants in many mass-joined actions to "pick and choose" certain diverse plaintiffs and defendants and argue that the federal courts should exercise jurisdiction over those parties and sever and remand the remaining non-diverse parties. However, such an expansive interpretation of the misjoinder doctrine would present both conceptual and practical difficulties, for the reasons explained below.

As a conceptual matter, the U.S. Supreme Court and the Fifth Circuit emphasized in *Cockrell* and *Smallwood III* that the improper joinder doctrine applies in cases where a non-diverse defendant(s) was fraudulently/improperly joined specifically to defeat diversity jurisdiction and that it does not apply to defenses which are common to all defendants. In light of *Smallwood III,* it seems reasonable to conclude that the Fifth Circuit would likewise apply the fraudulent *mis*joinder doctrine most readily in cases where it is clear that a particular party was *mis*joined specifically to defeat removal jurisdiction, rather than in a case such as the present one, involving the arguable misjoinder of numerous plaintiffs and defendants, for reasons which may or may not have been motivated by defeating removal jurisdiction.

The court is aware that plaintiffs in this state will often join together for reasons which have nothing to do with defeating federal removal jurisdiction. For example, plaintiffs will often seek to join together in order that their claims might be heard in a county which is deemed to be a favorable forum for plaintiffs or simply to present a united front for the purposes of negotiating a settlement. While such forms of joinder may be abusive in certain cases, it is clearly Mississippi trial courts, unencumbered by the limitations of diversity jurisdiction or by the "egregious" standard in *Tapscott,* which are in the best position to address such abuses.

The power of Mississippi state courts to address abuses of Rule 20 is by no means merely theoretical. Mississippi trial courts, with considerable prodding from the Mississippi Supreme Court, have recently assumed a far more aggressive approach in severing and transferring claims which are found to have violated Rule 20. As a result, mass tort litigation in this state bears little resemblance to the "free for all" which prevailed in many counties in this state until recently. The effectiveness with which Mississippi state courts have addressed abuses of Mississippi's Rule 20 far surpasses anything the federal courts, limited by the constraints of diversity jurisdiction, could have accomplished. Moreover, Mississippi state courts have accomplished this without resort to the lengthy process of removal, remand-related discovery, briefing and, eventually, a ruling from a district court. There is simply no question that Mississippi trial courts are in a position to apply Mississippi's joinder rules in a more effective and judicially economical manner than federal district courts.

This is not to say that the misjoinder doctrine will find no proper application in federal district courts; it almost certainly will. However, in the absence of Fifth Circuit guidance to the contrary, this court will be more willing to find "egregious" misjoinder in cases where it seems clear that parties were misjoined specifically to defeat diversity jurisdiction as opposed to cases where such an inference is less clear.[6] For example, if the court were presented with a case involving claims asserted against a California defendant by a Mississippi plaintiff, it might well raise a strong inference of fraudulent misjoinder if the Mississippi plaintiff sought to join with a California plaintiff asserting completely unrelated claims. In this case, by contrast, the court is presented with more than twenty Mississippi plaintiffs joining together for reasons which may or may not have anything to do with defeating removal jurisdiction.

■ In light of the foregoing, the court concludes that the fraudulent misjoinder doctrine would not assist defendants in this case even if the Mississippi Supreme Court were to apply stricter joinder standards in consumer fraud cases. To reiterate, however, the Mississippi Supreme Court has not yet overruled the case law applying liberal joinder standards in consumer fraud cases, and it is far from clear that the joinder of the parties in this case was improper under Miss. R. Civ. P. 20, much less "egregiously" so under *Tapscott.* Defendants have therefore failed to establish that the fraudulent misjoinder doctrine applies in this case, and diversity jurisdiction is plainly lacking.

The court now turns to defendants' argument that bankruptcy jurisdiction exists in this case. In response to plaintiffs' motion to remand, defendants argue that the court has "related to" bankruptcy jurisdiction based on the fact that, at the time the case was filed and removed, plaintiffs Josephine Burgess and Brenda Steen had prior bankruptcies to which this case "relates," within the meaning of 28 U.S.C. § 1334. In the court's view, the issue of whether it has "related to" jurisdiction in this case is largely immaterial, given that discretionary abstention, *see* 28 U.S.C. § 1334(c)(1), and/or equitable remand, *see* 28 U.S.C. § 1452(b) are appropriate, even assuming that the court has "related to" jurisdiction. Because the doctrines of discretionary abstention and equitable remand are very similar, they require the court to consider many of the same factors. *See Davis v. Life Investors Ins. Co. of America,* 282 B.R. 186, 194 (S.D.Miss. 2002). These factors include:

(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;

(2) extent to which state law issues predominate over bankruptcy issues;

(3) difficult or unsettled nature of applicable law;

(4) presence of related proceeding commenced in state court or other non-bankruptcy proceeding;

(5) jurisdictional basis, if any, other than § 1334(c);

(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;

---

**6.** This court will also be more likely to find misjoinder in cases in which the remedy for any misjoinder would be consistent with considerations of judicial economy. There may be cases in which the court suspects that the parties have misjoined in order to defeat removal jurisdiction, but where the proper remedy would be to retain jurisdiction over, and try separately, dozens of separate actions in federal court. In such cases, the court will likely require an even clearer showing of fraudulent misjoinder.

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the ... court's docket;

(10) the likelihood that the commencement of the proceeding in the [district] court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of non-debtor parties;

(13) comity; and

(14) the possibility of prejudice to other parties in the action.

*Id.*

■ In the court's view, these factors militate heavily in favor of remand. The present lawsuit is clearly not a "core proceeding" within the meaning of 28 U.S.C. § 157(b), and the court would also note that state law issues predominate heavily over any federal issues in this case. Indeed, the purpose of the present lawsuit is simply to place a value on the asset (i.e. plaintiffs' cause of action) that defendants allege to be an asset of plaintiffs' bankruptcy estate, and this valuation may be performed equally well in state court. The court sees little, if any, practical benefit in retaining jurisdiction over this case when the bankruptcy court and the bankruptcy trustee may protect the interests of plaintiffs' creditors, regardless of whether this lawsuit is tried in state or federal court. Although plaintiffs' bankruptcy creditors do have legitimate interests in the disposition of this case (assuming that the lawsuit is deemed to be an asset of the bankruptcy estate), the intervention of this court is not required to protect those interests.

■ The court would also note that the mandatory abstention factors set forth in 28 U.S.C. § 1334(c)(2) likewise require abstention. Section 1334(c)(2) *requires* this court to abstain in cases where

1. A motion has been timely filed requesting abstention.

2. The cause of action is essentially one that is premised on state law.

3. The proceeding is non-core or related to the bankruptcy case.

4. The proceeding could not otherwise have been commenced in federal court absent the existence of the bankruptcy case.

5. The proceeding has already been commenced and can be timely adjudicated in a state court forum.

*Blakeley v. United Cable System,* 105 F.Supp.2d 574, 583 n. 9 (S.D.Miss.2000)(citing 28 U.S.C. § 1334(c)(2)). Thus, in cases where (as here) a timely motion for abstention has been filed, the law gives the court no choice but to abstain from hearing non-core cases premised on state law which could not have been commenced in federal court absent the existence of the bankruptcy case, so long as the case can be timely adjudicated in state court. Clearly, this law establishes a federal policy weighted against retaining jurisdiction over admittedly non-core cases such as the present one. Moreover, given the stated federal policy in favor of timely adjudicating claims, it should not be ignored that the process of removing state law claims based on a plaintiff's prior bankruptcy filing often (if not usually) serves to create more delays than it prevents. Regardless of whether the court is required to abstain from hearing this case, it clearly has the discretion to do so, and the court concludes that equitable remand is in order.[7]

---

**7.** In the court's view, equitable remand is preferable to discretionary abstention, to

It is therefore ordered that plaintiffs' motion to remand [22–1] is granted, and this case is hereby remanded to the Circuit Court of Coahoma County.

avoid any problems, either real or perceived, relating to the running of the statute of limitations if the case were dismissed in the absten-

tion context. *See In Re Wright,* 231 B.R. 597, 601–02 (Bkrtcy.W.D.Tex.1999).