# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-31169

United States Court of Appeals
Fifth Circuit

**FILED**

March 24, 2016

Lyle W. Cayce
Clerk

KALE FLAGG,

Plaintiff - Appellant

v.

STRYKER CORPORATION; MEMOMETAL INCORPORATED, USA,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before STEWART, Chief Judge, and JOLLY, DAVIS, JONES, SMITH, DENNIS, CLEMENT, PRADO, OWEN, ELROD, SOUTHWICK, HAYNES, GRAVES, HIGGINSON, and COSTA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

We took this case *en banc* to decide whether the district court erred by dismissing the non-diverse defendants as improperly joined and exercising diversity jurisdiction over the remaining diverse defendants. We conclude that the district court did not err by concluding that the plaintiff had improperly joined the non-diverse defendants because the plaintiff had not exhausted his claims against those parties as required by statute. Therefore, the district court properly exercised jurisdiction over the diverse defendants which remained in the case.

No. 14-31169

I.

Defendants Dr. Denise Elliot, West Jefferson Medical Center, and the Foot and Ankle Center (collectively the "Medical Defendants") performed surgery and cared for Plaintiff-Appellant Kale Flagg in connection with implanting a toe joint in Flagg's foot. The toe implant that the Medical Defendants implanted was manufactured by Defendants-Appellees Stryker Corporation and Memometal Incorporated, USA (collectively the "Manufacturing Defendants").

Flagg claims that the surgery was unsuccessful. He alleges that the toe implant has caused him undue pain, and that he required further surgeries to correct the problem. He therefore alleges that the Medical Defendants committed malpractice by negligently performing the surgery. He further alleges that the toe implant manufactured by the Manufacturing Defendants was defective and unreasonably dangerous.

Flagg filed a lawsuit in Louisiana state court asserting state law medical malpractice claims against the Medical Defendants and state law products liability claims against the Manufacturing Defendants. All parties agreed that Flagg failed to exhaust his claims against the Medical Defendants in the manner required by the Louisiana Medical Malpractice Act before filing this suit.

The Manufacturing Defendants removed the case to federal court on the basis of diversity jurisdiction. Flagg is a citizen of Louisiana, and the Manufacturing Defendants are citizens of states other than Louisiana. Therefore, Flagg and the Manufacturing Defendants are completely diverse. However, the Medical Defendants, like Flagg, are all Louisiana citizens.

In their Notice of Removal, the Manufacturing Defendants argued that Flagg was prohibited from filing suit against the Medical Defendants because he failed to administratively exhaust his medical malpractice claims before

2

## No. 14-31169

filing this lawsuit as required by Louisiana law. The Manufacturing Defendants therefore argued that Flagg improperly joined the Medical Defendants, such that the district court could exercise diversity jurisdiction over the case.

Shortly after the Manufacturing Defendants removed the case, Flagg moved to stay the case to allow him to exhaust his claims against the Medical Defendants as required by Louisiana law. The district court denied the motion.

The Manufacturing Defendants then argued that, because Flagg failed to exhaust his claims against the Medical Defendants before filing suit, the district court should dismiss the Medical Defendants as improperly joined and disregard their citizenship for the purposes of diversity jurisdiction.

The district court, relying on our decisions in *Melder v. Allstate Corp.*, 404 F.3d 328 (5th Cir. 2005) and *Holder v. Abbott Laboratories, Inc.*, 444 F.3d 383 (5th Cir. 2006), agreed that Flagg had improperly joined the Medical Defendants. The court therefore dismissed the Medical Defendants from the case without prejudice. The district court then exercised diversity jurisdiction over the remaining defendants and dismissed Flagg's action against the Manufacturing Defendants with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Flagg appealed the district court's judgment. Although Flagg did not challenge the district court's subject matter jurisdiction on appeal, the panel considered *sua sponte* whether the district court properly exercised diversity jurisdiction over the case. The panel majority concluded that the Medical Defendants were not improperly joined and directed the district court to remand the case to state court.[1] For that reason, the panel did not reach the

---

[1] *Flagg v. Stryker Corp.*, 801 F.3d 456 (5th Cir. 2015), *vacated*, 805 F.3d 610 (2015).

No. 14-31169

propriety of the district court's Rule 12(b)(6) dismissal of the Manufacturing Defendants.

We took this case *en banc* to decide whether the district court correctly dismissed the action against the Medical Defendants as improperly joined and exercised jurisdiction over the Manufacturing Defendants.

## II.

The federal courts may exercise diversity jurisdiction over a civil action between citizens of different States if the amount in controversy exceeds $75,000.[2] An out-of-state defendant may generally remove a case filed in state court to a federal district court if the parties are diverse, the amount in controversy requirement is met, and none "of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."[3]

Ordinarily, diversity jurisdiction requires complete diversity – if any plaintiff is a citizen of the same State as any defendant, then diversity jurisdiction does not exist.[4] However, if the plaintiff improperly joins a non-diverse defendant, then the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant.[5]

---

[2] 28 U.S.C. § 1332(a)(1).

[3] *Id*. § 1441(a)-(b).

[4] *E.g.*, *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806).

[5] *E.g.*, *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 185-86 (1907); *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572-73 (5th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 992 (2005).

No. 14-31169

Federal courts have jurisdiction to determine their own subject matter jurisdiction.[6] In this context, the court has the obligation to determine whether a plaintiff has improperly joined a party that defeats federal diversity jurisdiction.[7]

This Court articulated its standard for improper joinder in its recent *en banc* decision in *Smallwood v. Illinois Central Railroad Co.* In *Smallwood*, we explained that a non-diverse party is improperly joined if the plaintiff is unable "to establish a cause of action against the non-diverse party in state court."[8] Thus, the test for improper joinder "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant."[9] "In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant."[10]

In most cases, to determine whether the plaintiff has any possibility of recovery against the non-diverse defendant, the court should "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."[11]

---

[6] *E.g.*, *In re Transtexas Gas Corp.*, 303 F.3d 571, 576-77 (5th Cir. 2002) (citing *Scherbatskoy v. Halliburton Co.*, 125 F.3d 288, 290 (5th Cir. 1997)).

[7] *E.g.*, *Wecker*, 204 U.S. at 185-86; *Smallwood*, 385 F.3d at 572-73.

[8] *Smallwood*, 385 F.3d at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

A federal court may also find improper joinder where the plaintiff has committed "actual fraud in the pleading of jurisdictional facts." *Id.* (quoting *Travis*, 326 F.3d at 646-47). This case does not implicate that aspect of the improper joinder doctrine.

[9] *Id.*

The *Smallwood* standard is consistent with longstanding Supreme Court precedent. *See Wecker*, 204 U.S. at 183-86.

[10] *Smallwood*, 385 F.3d at 574.

[11] *Id.* at 573 (citing *McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004); *Parks v. New York Times, Co.*, 308 F.2d 474, 478 (5th Cir. 1962)).

No. 14-31169

However, where the plaintiff's complaint has "misstated or omitted discrete facts that would determine the propriety of joinder," the court may instead "pierce the pleadings and conduct a summary inquiry."[12] Such a summary inquiry "is appropriate only to identify the presence of discrete and undisputed facts that would preclude [the] plaintiff's recovery against the in-state defendant."[13] The decision to pierce the pleadings "lie[s] within the discretion of the trial court."[14]

Crucially, "[j]urisdictional facts are determined at the time of removal, not by subsequent events."[15] Thus, to determine whether a plaintiff has improperly joined a non-diverse defendant, the district court must examine the plaintiff's possibility of recovery against that defendant *at the time of removal*. This inquiry must be made regardless of whether the court examines the plaintiff's chance of surviving a Rule 12(b)(6) challenge or, instead, conducts a summary inquiry by piercing the pleadings.

III.

Flagg filed a motion in the district court asking to stay the case so he could exhaust his claims against the Medical Defendants. By doing so, Flagg conceded that he failed to exhaust his medical malpractice claims before filing suit. This concession was the only fact outside the complaint that the district court considered to determine whether Flagg improperly joined the Medical

---

[12] *Id.* (citing *Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 389 n.10 (5th Cir. 2002)).

Conducting a summary inquiry is also consistent with longstanding Supreme Court precedent. *See Wecker*, 204 U.S. at 183-86 (holding that the district court did not err by considering affidavit testimony when determining whether the plaintiff improperly joined a non-diverse defendant).

[13] *Smallwood*, 385 F.3d at 573-74 (citing *Travis*, 326 F.3d at 648-49).

[14] *Id.* at 573.

[15] *Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 635 (5th Cir. 2014).

No. 14-31169

Defendants. Considering this fact was entirely consistent with *Smallwood*'s authorization to conduct a "Rule 12(b)(6)-type analysis"[16] to "identify the presence of discrete and undisputed facts that would preclude [the] plaintiff's recovery against the in-state defendant."[17]

For the reasons set forth below, the district court correctly concluded that Flagg could not "establish a cause of action against [the Medical Defendants] in state court" at the time the Manufacturing Defendants removed the case because he had not exhausted his claims before filing suit.[18] It follows that Flagg improperly joined the Medical Defendants, and the district court properly exercised diversity jurisdiction over the Manufacturing Defendants.

A.

The Louisiana Medical Malpractice Act ("LMMA") provides in relevant part that "[n]o action against a health care provider . . . may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel."[19] The Supreme Court of Louisiana has interpreted this provision to not only require the plaintiff to *present* the claim to a medical review panel, but also to wait until "the panel has *rendered its expert opinion on the merits of the complaint*" before filing suit.[20] With exceptions

---

[16] *Smallwood*, 385 F.3d at 573.

Even when "deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). By filing his motion to stay, Flagg admitted in a public court record that he failed to exhaust his claims. Thus, this is not one of those "cases, hopefully few in number," in which a district court must "conduct a summary inquiry" to determine that the plaintiff improperly joined the non-diverse defendant. *Smallwood*, 385 F.3d at 573. Rather, this is a mine-run improper joinder case that can be resolved by a "Rule 12(b)(6)-type analysis." *Id.*

[17] *See Smallwood*, 385 F.3d at 573-74 (citing *Travis*, 326 F.3d at 648-49).

[18] *See id.* at 573 (quoting *Travis*, 326 F.3d at 646-47).

[19] LA. REV. STAT. ANN. § 40.1231.8(B)(1)(a)(i).

[20] *Delcambre v. Blood Sys., Inc.*, 893 So. 2d 23, 27 (La. 2005) (emphasis added).

inapplicable to the facts of this case,[21] "the plaintiff's suit must be dismissed" without prejudice if the plaintiff fails to satisfy this exhaustion requirement before filing suit.[22]

On appeal, Flagg does not seriously dispute that the Medical Defendants qualify as "health care provider[s]" within the meaning of the LMMA. Although Flagg *presented* his malpractice claims against the Medical Defendants to a medical review panel before filing suit in state court, the medical panel had not rendered its expert opinion before Flagg filed this suit. Nor had the medical panel rendered its opinion before the Manufacturing Defendants removed this case to federal court. Therefore, Flagg had not complied with the LMMA's exhaustion requirement at the time of removal.

Consequently, if the Manufacturing Defendants had not removed this case to federal court, there is no doubt that the state court would have been required to dismiss the Medical Defendants from the case. It follows that, at the time of removal, Flagg was unable to "establish a cause of action against the [Medical Defendants] in state court."[23] Thus, the district court properly discounted the citizenship of the Medical Defendants.

## B.

Our conclusion is bolstered by our prior decisions in *Melder v. Allstate Corp.*, 404 F.3d 328 (5th Cir. 2005) and *Holder v. Abbott Laboratories, Inc.*, 444 F.3d 383 (5th Cir. 2006), in which two different panels of this Court held that

---

[21] The dissent repeatedly emphasizes that "the parties can waive the medical review process in several ways." That is irrelevant because the parties have not waived the medical review process in this case. Thus, Flagg was required to complete the medical review process before filing suit.

[22] *E.g., Gele v. Binder*, 904 So. 2d 836, 837 (La. Ct. App. 2005) (citing *Bennett v. Krupkin*, 814 So. 2d 681, 685 (La. Ct. App. 2002)).

[23] *See Smallwood*, 385 F.3d at 573 (quoting *Travis*, 326 F.3d at 646-47).

a non-diverse defendant is improperly joined if the plaintiff fails to exhaust his claims before filing suit.

The plaintiffs in *Melder* claimed that the defendants unlawfully set discriminatory insurance rates.[24] Most of the defendants were insurance companies who were diverse from the plaintiffs. However, one of the defendants, the Louisiana Insurance Rating Commission ("LIRC"), was not diverse. Nevertheless, because the plaintiffs "ha[d] not exhausted the adequate administrative remedies provided by Louisiana law" with respect to their claims against LIRC, we concluded that there was "no reasonable basis Plaintiffs might be able to recover . . . against the sole non-diverse defendant, LIRC."[25] Thus, the plaintiffs had improperly joined LIRC, and the district court properly exercised diversity jurisdiction over the case.[26]

Likewise, the plaintiffs in *Holder* sued a combination of diverse and non-diverse defendants for injuries resulting from childhood vaccines.[27] "The Vaccine Act requires that claims 'for a vaccine-related injury or death' must first be brought in the United States Court of Federal Claims. Suit in state and federal courts is barred unless and until there has been compliance" with this exhaustion requirement.[28] Because the plaintiffs in Holder had failed to initially file their claims against the non-diverse defendants in the Court of Claims, "the Vaccine Act foreclose[d] the . . . suit against the non-diverse defendants."[29] We therefore held that the plaintiffs' "joinder of the non-diverse defendants was improper and remand to state court was not warranted."[30]

---

[24] 404 F.3d at 330.
[25] *Id.* at 332.
[26] *Id.*
[27] 444 F.3d at 385-86.
[28] *Id.* at 387-88 (citing 42 U.S.C. § 300aa-11).
[29] *Id.*
[30] *Id.* at 387.

No. 14-31169

The logic of *Melder* and *Holder* applies equally here. Because Flagg did not complete the medical panel review process before filing suit, the LMMA explicitly prohibited him from suing the Medical Defendants in any court. Thus, Flagg had no possibility of recovery against the Medical Defendants, and the district court correctly dismissed the Medical Defendants as improperly joined.

Flagg argues – and the dissent agrees – that this case is distinguishable from *Melder* and *Holder* because the administrative procedure under the LMMA is not a "comprehensive" scheme designed to finally adjudicate a plaintiff's malpractice claim. We are not persuaded. Flagg has cited no authority to support this argument. Indeed, with the exception of the panel majority in this case, no court has ever adopted such a distinction, and for good reason; a rule that requires courts to individually examine each state statutory scheme to determine whether it is "comprehensive" and "adjudicative" is neither administrable nor sensible.[31] *Melder* and *Holder* establish a bright-line rule: if a statute requires the plaintiff to exhaust his administrative remedies before filing suit, we enforce that statutory mandate as written.[32]

---

[31] *See Hertz Corp. v. Friend*, 559 U.S. 77, 79 (2010) ("[A]dministrative simplicity is a major virtue in a jurisdictional statute." (citing *Sisson v. Ruby*, 497 U.S. 358, 375 (1990) (Scalia, J., concurring in the judgment))).

[32] Indeed, when a federal statute requires exhaustion, the federal courts consistently require plaintiffs to exhaust their claims before filing suit, and dismiss those claims that the plaintiff has not exhausted. *See*, *e.g.*, *Jones v. Bock*, 549 U.S. 199, 212 (2007) (holding that unexhausted claims under the Prison Litigation Reform Act "cannot be brought in court"); *M.L. v. Indep. Sch. Dist.*, 451 F. App'x 424, 428 (5th Cir. 2011) ("Exhaustion is required so long as a plaintiff is seeking some remedy under the IDEA."); *Harris v. Trustmark Nat'l Bank*, 287 F. App'x 283, 288 (5th Cir. 2008) (explaining that "[a]n ERISA plaintiff must exhaust his remedies before pursuing a claim in federal court"). Respect for state legislatures counsels in favor of enforcing state exhaustion statutes just as we enforce federal exhaustion statutes.

The dissent argues that the above-cited cases are irrelevant because, under these federal exhaustion schemes, failure to exhaust is an affirmative merits defense, not a jurisdictional bar. The dissent suggests that district courts should not find improper joinder

No. 14-31169

C.

Flagg also argues that the exhaustion issue is now moot because a medical review panel issued an expert opinion regarding his claims on September 17, 2015, over a year after Flagg initially sued the Medical Defendants. This argument is meritless. As noted above, "[j]urisdictional facts are determined at the time of removal, not by subsequent events."[33] Flagg had not completed the medical panel review process at the time the Manufacturing Defendants removed the case. Thus, measuring the jurisdictional facts as they existed at the time of removal, Flagg's unexhausted claims against the Medical Defendants were doomed to dismissal, and Flagg therefore had no possibility of recovery against the Medical Defendants.

Furthermore, the Louisiana courts have squarely held that a plaintiff must exhaust the medical panel review process *before* filing suit; even if the plaintiff obtains an expert opinion after filing suit, the suit nevertheless remains premature and the court must dismiss the suit without prejudice.[34] Thus, even though Flagg has now completed the medical review process, that does not cure his failure to exhaust before filing this suit. The state court still

---

on the basis of an affirmative defense, even where, as here, the plaintiff concedes he failed to exhaust his claims before filing suit.

This Court, following *Smallwood's* direction, has consistently found improper joinder where a non-jurisdictional affirmative defense (such as statute of limitations) conclusively bars the plaintiff's claims against the non-diverse defendant. *See Boone v. Citigroup, Inc.*, 416 F.3d 382, 391 (5th Cir. 2005) (holding that the "joinder of the non-diverse appellees was improper" because plaintiff's claims "against the non-diverse appellees [we]re conclusively barred by the residual statute of limitations"); *Bell v. Texaco, Inc.*, 493 F. App'x 587, 592 (5th Cir. 2012) (holding that estate "was improperly joined" because "any potential claims against the [e]state [we]re time-barred under the Mississippi statute of limitations applying to trusts").

Thus, it is irrelevant that LMMA's exhaustion requirement does not create a jurisdictional bar. The critical fact is that, under state law, Flagg had no reasonable possibility of recovery on an unexhausted claim.

[33] *Am. Nat'l Prop. & Cas. Co.*, 746 F.3d at 635.

[34] *Brister v. S.W. La. Hosp. Ass'n*, 624 So. 2d 970, 971 (La. Ct. App. 1993).

No. 14-31169

would have been required to dismiss Flagg's claims against the Medical Defendants, so the Medical Defendants are improper defendants in this case.

IV.

In sum, the district court correctly concluded that Flagg improperly joined the Medical Defendants because Flagg did not exhaust his claims as required by statute against those parties. The district court therefore properly dismissed the Medical Defendants from the case and exercised diversity jurisdiction over Flagg's remaining claims against the Manufacturing Defendants. We therefore affirm that portion of the district court's order.

Because the panel majority ordered the district court to remand this case to state court, the panel did not address the district court's ruling on the merits of the Manufacturing Defendants' Rule 12(b)(6) motion. We therefore return the case back to the panel to review the district court's order dismissing Flagg's claims against those defendants.

AFFIRMED in part and RETURNED to the panel for further proceedings.

No. 14-31169

HAYNES, Circuit Judge, joined by DENNIS, ELROD and GRAVES, Circuit Judges, concurring and dissenting:

Our prior decision in *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568 (5th Cir. 2004) (en banc), has garnered much confusion and criticism.[1] Instead of clarity, the majority opinion unnecessarily adds yet another layer to the already expansive view of *Smallwood*. Properly applied, the *Smallwood* test would result in a conclusion that the federal courts lack jurisdiction over this case. From the majority opinion's determination that we have jurisdiction, I respectfully dissent.

Under the improper joinder doctrine, a court should disregard the citizenship of non-diverse defendants where "there is no reasonable basis for predicting that the plaintiff might establish liability . . . against the in-state defendant[s]." *Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 390 (5th Cir. 2000); *see Smallwood*, 385 F.3d at 573. In other words, a defendant must "demonstrate[] that there is no possibility of recovery by the plaintiff against an in-state defendant." *Smallwood*, 385 F.3d at 573. The Manufacturing Defendants argue and the majority opinion agrees that the case against the Medical Defendants is premature in light of what was then a still-pending

---

[1] *See, e.g.*, *Walton v. Tower Loan of Miss.*, 338 F. Supp. 2d 691, 694 & n.2 (N.D. Miss. 2004) (criticizing *Smallwood*'s standard and stating that the division between the majority opinion and dissenting opinions in *Smallwood* "puts district judges in a difficult position" regarding the proper standards to apply); James M. Underwood, *From Proxy to Principle: Fraudulent Joinder Reconsidered*, 69 ALB. L. REV. 1013, 1086, 1092–94 (2006) (criticizing our approach as a "flawed" proxy that "fails to implement any underlying purpose behind federal diversity jurisdiction" and which is "tantamount to authorizing federal courts to adjudicate the merits of state law claims between nondiverse citizens"); Matthew J. Richardson, *Clarifying and Limiting Fraudulent Joinder*, 58 FLA. L. REV. 119, 150–54, 165 (2006) (criticizing our approach and arguing that "[f]raudulent joinder review should be more limited in scope than it is in the Fifth Circuit, [which] applies the doctrine most expansively").

(since resolved) medical review panel proceeding and, therefore, there is "no reasonable basis" to predict liability against the Medical Defendants.

The majority opinion correctly states that Louisiana has an administrative scheme governing medical malpractice claims: the Louisiana Medical Malpractice Act ("LMMA"). The LMMA governs claims for "any unintentional tort or any breach of contract" brought against a qualified "health care provider." LA. REV. STAT. ANN. §§ 1231.1, 1231.8. The majority opinion notes that the LMMA requires a plaintiff to submit a claim to a medical review panel before bringing suit. *Id.* § 1231.8(B)(1)(a)(i) ("No action against a health care provider covered by this Part . . . may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.").

Importantly, for our purposes, the panel's "sole duty" is "to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care," by rendering one or more of three "expert opinions":

> (1) The evidence supports the conclusion that the defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.
>
> (2) The evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint.
>
> (3) That there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court.

*Id.* § 1231.8(G).

Further, the parties can waive the medical review process in several ways:

No. 14-31169

1.  Most simply, "[b]y agreement of all parties, the use of the medical review panel may be waived."  *Id.* § 1231.8(B)(1)(c); *see also Delcambre v. Blood Sys., Inc.*, 893 So. 2d 23, 27 (La. 2005).

2.  Parties may also bypass the panel review process if they have "validly agreed" to submit the claims "to a lawfully binding arbitration procedure."  LA. REV. STAT. ANN. § 1231.8(A)(1)(a).

3.  If the parties or the medical review panel fail to appoint an attorney chairperson and notify the medical review board within one year from when the claim was filed, they have waived the use of the panel.  *Id.* § 1231.8(A)(2)(c).

4.  A lawsuit may proceed despite any claim before a medical review panel if the panel fails to render a decision within one year of the selection of the attorney chairperson, unless the parties receive a court-ordered extension for good cause.  *Id.* § 1231.8(B)(1)(b).

5.  Additionally, a health care provider can circumvent the medical review process by filing a lawsuit and challenging the claimant's malpractice claim as prescribed or for failure to state a claim under Louisiana law.  *Id.* § 1231.8(B)(2)(a)–(b) (noting defendants may claim "no right of action" under Louisiana's Code of Civil Procedure, Article 927(6), or as prescribed by the statute of limitations for medical malpractice in LA. REV. STAT. ANN. § 9:5628).

Against this backdrop, we examine whether Plaintiff Flagg had "no possibility of recovery" against the Medical Defendants when he filed his complaint in state court.  *Smallwood*, 385 F.3d at 573.  First, the face of the complaint did not evidence any "failure to exhaust."  Absent a jurisdictional nature to "failure to exhaust," we treat such failures to exhaust as affirmative

15

No. 14-31169

defenses, not jurisdictional prerequisites.[2] *See, e.g.*, *Young v. City of Houston*, 906 F.2d 177, 180 (5th Cir. 1990) (holding that the plaintiff's failure to first exhaust remedies before the EEOC was not a jurisdictional prerequisite to suit in federal court).[3] For example, in the context of the Prison Litigation Reform Act, we have followed the Supreme Court's guidance in *Jones v. Bock*, 549 U.S. 199, 212, 216 (2007), and held that exhaustion is an affirmative defense. *See, e.g.*, *Cantwell v. Sterling*, 788 F.3d 507, 508–09 (5th Cir. 2015); *Coleman v. Sweetin*, 745 F.3d 756, 763 (5th Cir. 2014).

Similarly, Louisiana treats failure to comply with the LMMA as a defensive issue, not a jurisdictional prerequisite. *See Delcambre*, 893 So. 2d at 27; *Gele v. Binder*, 904 So. 2d 836, 837–38 (La. Ct. App. 2005). This makes particular sense here since the parties can waive the LMMA requirements. On the face of the plaintiff's pleading, then, there was nothing indicating "no possibility of recovery" against the Manufacturing Defendants who were alleged to have manufactured defective toe implants that the in-state Medical

---

[2] The majority opinion suggests that its solution respects state legislatures by treating federal and state exhaustion requirements similarly. *See* Majority Opinion at 10 & n.29. However, the key question in a diversity case is whether exhaustion is a merits-based affirmative defense or a jurisdictional prerequisite. In one of the cases cited by the majority opinion, we recognized the difference between the affirmative defense of exhaustion and a jurisdictional prerequisite and declined to dismiss the case for lack of jurisdiction. *See M.L. v. Frisco Indep. Sch. Dist.*, 451 F. App'x 424, 427 (5th Cir. 2011). The other case cited dismissed an ERISA plaintiff's suit for failure to exhaust remedies, without discussing jurisdiction. *See Harris v. Trustmark Nat'l Bank*, 287 F. App'x 283, 288 (5th Cir. 2008). We have refused to treat other statutory requirements as jurisdictional in the ERISA context and would likely treat the failure to exhaust in the same way. *See, e.g., Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 345–47 (5th Cir. 2014); *ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518, 523 (5th Cir. 2013) (en banc).

[3] Our court has sometimes inconsistently applied the rule that a failure to exhaust under Title VII is not a jurisdictional issue, but under our rule of orderliness we are bound to follow *Young*'s standard. *See United States v. Alcantar*, 733 F.3d 143, 145–46 (5th Cir. 2013). Recent Supreme Court precedent instructing us not to conflate the merits and jurisdiction supports this approach. *See, e.g., Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513–16 (2006); *see also Shapiro v. McManus*, 136 S. Ct. 450, 455–56 (2015).

Defendants improperly implanted.  In other words, the pleadings showed a garden-variety case against in-state and out-of-state defendants whose separate allegedly tortious acts combined to cause a single harm to the plaintiff.

Unusually for an en banc case, the majority opinion engages in a factual analysis of the circumstances presented here and concludes that the district court properly relied on Flagg's concession in his motion to stay that he failed to exhaust his medical malpractice claims before filing suit.  In turn, the majority opinion concludes that this case falls within the Rule 12(b)(6)-type analysis approved by *Smallwood*.  First, *Smallwood* described the "Rule 12(b)(6)-type analysis" as permitting courts to look "*at the allegations of the complaint* to determine whether the complaint states a claim . . . ."  *Id.* at 573 (emphasis added).  Second, allowing courts to rely on concessions included in motions filed in the federal district court poses more questions than it resolves.  Left unanswered is the future LMMA case when a plaintiff does not concede anything by moving to remand.  Thus, this en banc opinion really only answers one question in one case.

The majority opinion also contends that it is appropriate to find improper joinder based on a non-jurisdictional affirmative defense, like one involving the statute of limitations.  *See Boone v. Citigroup, Inc.*, 416 F.3d 382, 392 (5th Cir. 2005).  Certainly, since *Smallwood* allowed a "Rule 12(b)(6)-type analysis" and piercing the pleadings, our court has allowed delving into such non-jurisdictional affirmative defenses as part of the improper joinder inquiry.  *See id.*; *Smallwood*, 385 F.3d at 573.  That does not mean this approach is correct or easily administrable.  In fact, the Supreme Court recently clarified that even mandatory rules under state law are not jurisdictional unless those statutes explicitly "speak in jurisdictional terms."  *See V.L. v. E.L.*, 577 U.S. ___, ___ S.

No. 14-31169

Ct. ____, No. 15-648, 2016 WL 854160, at *3 (Mar. 7, 2016) (per curiam).  The exhaustion requirement under the LMMA is *not* explicitly jurisdictional (to the contrary it is not jurisdictional), just like the mandatory requirement the Court rejected as non-jurisdictional in *V.L.*  As an en banc court, we should clarify the improper joinder doctrine and hew it more closely to the Supreme Court's instruction to avoid treating merits issues as jurisdictional.  *See, e.g.*, *id.*; *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513–16 (2006).  Instead, the majority opinion muddies the waters with numerous qualifiers and expands a standard that does not fully respect our role as courts of limited jurisdiction.

Because nothing on the face of the complaint and nothing in the LMMA show that there is "no possibility of recovery" against the in-state Medical Defendants, the panel opinion properly found federal diversity jurisdiction lacking.  *See Flagg v. Stryker Corp.*, 801 F.3d 456, 462–63 (5th Cir. 2015); *Smallwood*, 385 F.3d at 573.  The en banc majority opinion contends that the panel opinion was not faithful to our decisions in *Melder v. Allstate Corp.*, 404 F.3d 328 (5th Cir. 2005), and *Holder v. Abbott Laboratories, Co.*, 444 F.3d 383 (5th Cir. 2006).  Of course, the en banc court has the right to overrule prior precedents of this court and should do so to the extent those precedents support exercising jurisdiction here.  But, as the panel opinion explained, it is not necessary to overrule *Melder* and *Holder* to conclude that jurisdiction is lacking here.  *See Flagg*, 801 F.3d at 460–62.

*Melder* involved a comprehensive, adjudicative administrative process to challenge rates before the Louisiana Insurance Rate Commission ("LIRC"), which evaluates and pre-clears insurance rates after determining whether the

18

No. 14-31169

rates are reasonable and not unfairly discriminatory.[4] 404 F.3d at 330–32. We repeatedly emphasized the comprehensiveness of the administrative scheme that, in that case, would actually result in an adjudication of the plaintiffs' claim. *Id. Holder* also involved a comprehensive adjudicatory scheme under the National Childhood Vaccine Injury Act, which requires full judgment on the merits by the United States Court of Federal Claims with appeal to the Court of Appeals for the Federal Circuit. 444 F.3d at 387–89 (quoting 42 U.S.C. §§ 300aa–33(5) & –11(a)(1)); *see also* 42 U.S.C. § 300aa–12(f).

All agree that the LMMA is not such a comprehensive administrative scheme designed to adjudicate a plaintiff's malpractice claims. It results only in an expert opinion that is admissible in the subsequent lawsuit but not binding on the parties or the court and not self-effectuating. *See* LA. REV. STAT. ANN. § 1231.8(G), (H) (noting the "report of the expert opinion reached by the medical review panel shall be admissible as evidence" in any subsequent lawsuit, but "shall not be conclusive," and that the panel has the "sole duty to express its expert opinion" as to whether the applicable standards of care were met). In other words, the medical review panel will not adjudicate Flagg's claim at all; it will simply provide evidentiary support for one side or the other. *See* LA. REV. STAT. ANN. § 1231.8(H). The majority opinion finds this distinction unpersuasive because no court has ever relied on it.[5] *See* Majority Opinion at 9–10.

---

[4] Additionally, the record did not show that the plaintiffs in *Melder* filed for administrative remedies with LIRC at all, and the plaintiffs did not respond to the exhaustion issue in their briefing, except to claim this court could not decide it. 404 F.3d at 332.

[5] The majority opinion also claims this distinction is not easily administrable. Yet, it is easy enough to see that the LMMA is not a comprehensive, adjudicative scheme. Furthermore, if a bright-line, easily administrable standard is the goal, the majority opinion does not approach it. It creates new exception-riddled rules based on the particular facts of

No. 14-31169

The reason no other circuit has relied on this distinction is that no other circuit has gone as far as the majority opinion here.[6]     The trend is quite different.  The Supreme Court has instructed us not to conflate the merits of a case and jurisdiction.  *See Arbaugh*, 546 U.S. at 513–16; *V.L.*, 2016 WL 854160, at *3.  Following that instruction, other circuits facing exhaustion defenses have properly dealt with those defenses on the merits, rather than as a matter of jurisdiction.  *See, e.g.*, *Vazquez-Rivera v. Figueroa*, 759 F.3d 44, 46–49 (1st Cir. 2014); *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 103–04, 111–13 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 1398 (2015); *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850–51 (8th Cir. 2012)[7]; *cf. Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir. 2009)[8] (concluding no improper joinder occurred and that it was error to maintain jurisdiction and dismiss the case based on a

---

this case, allows courts to use a Rule 12(b)(6)-type analysis that looks beyond the complaint and may sometimes delve into the merits through a piercing of the pleadings—although we have not clarified when such piercing is appropriate—and ignores the Supreme Court's recent guidance about clearly and cleanly separating jurisdictional issues from merits defenses like exhaustion.  *See V.L.*, 2016 WL 854160, at *3; *Arbaugh*, 546 U.S. at 513–16.  As an en banc court, we have the authority and duty to clarify, even if it is necessary to overrule prior precedent to the extent of any inconsistency.

[6] *See also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160–62 (2010); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89–90 (1998).

[7] *See also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–95 (1982) (holding deadlines for timely filing claims with the EEOC were not jurisdictional); *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 92–96 (1990) (holding a Title VII filing deadline was not jurisdictional); *Coke v. Gen. Adjustment Bureau*, 640 F.2d 584, 588–89, 595 (5th Cir. 1981) (en banc) (following a trend in Supreme Court decisions holding that the Title VII EEOC filing deadline was not jurisdictional and holding that a 180-day notice requirement under the Age Discrimination in Employment Act, 29 U.S.C. § 626(d)(1), was likewise not jurisdictional).

[8] The Ninth Circuit relied, in part, on *Smallwood* in arriving at this result, noting language in *Smallwood* that distinguished between "an attack on the merits" of a plaintiff's case and other situations involving no possibility of recovery under state law.  *See* 582 F.3d at 1044–45 (quoting *Smallwood*, 385 F.3d at 574).

"merits" defense of preemption). A few courts have stated this more plainly: "[T]o determine the absence of jurisdiction is error when the ruling is based upon an affirmative defense." *Holley Equip. Co. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987); *Salis v. Am. Exp. Lines*, 331 F. App'x 811, 814 (2d Cir. 2009) ("The district court's reliance on an affirmative defense to determine that the amount in controversy was insufficient to support diversity jurisdiction was improper."). The decision to adjudicate an affirmative defense that will (and did) evaporate over time under the guise of a jurisdictional analysis is the result of our own court's unnecessary expansion of *Smallwood*.[9]

Nothing about the plaintiff's pleadings or the LMMA shows that Flagg has no possibility of recovery against the Medical Defendants. Indeed, we are now at the point where the LMMA proceedings have concluded and Flagg has sued the Medical Defendants in state court. While this reality might not technically moot the argument regarding jurisdiction, it underscores that even viewed at the time of removal, the "possibility of recovery" was very real and has now come to the point where "recovery" will be judged on its merits. Thus, even using the *Smallwood* approach of piercing the pleadings to peek at the facts, *see* 385 F.3d at 573–74, we find no facts that negate recovery—only a temporary hurdle, since cleared.

The LMMA scheme is not the kind of comprehensive administrative scheme we have cited in allowing a district court to discount the citizenship of non-diverse parties. The majority opinion greatly expands *Smallwood* and

---

[9] We have struggled, in *Smallwood* and otherwise, to formulate a test to determine whether any basis for relief exists on a non-diverse state-law claim. Formulating the proper test is problematic, since the "judicially created doctrine" of improper joinder can involve peeking into the merits of state-law claims in cases where the parties facially are not completely diverse. *See Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 594–97 (E.D. Ky. 2011) (citation omitted).

## No. 14-31169

unnecessarily extends *Melder* and *Holder* beyond their stated reach to encompass a non-adjudicative, non-comprehensive, waivable process since concluded in this case. I respectfully dissent from the en banc court's decision that federal diversity jurisdiction exists here.

However, given that conclusion, I concur in the majority opinion's determination to remand the merits of the appeal from the Rule 12(b)(6) dismissal to the original panel for determination.